*In re* ESTATE OF CHARLOTTE HERWIG, Deceased (Wesley B. Herwig *et al.*, Plaintiffs and Counterdefendants-Appellants, v. Dixon National Bank *et al.*, as Co-ex'rs of the Estate of Charlotte Herwig, Deceased, *et al.*, Defendants and Counterplaintiffs-Appellees).

Second District   No. 2—92—0481

Opinion filed December 9, 1992.—Rehearing denied January 11, 1993.

Donald Q. Manning, of Clark, McGreevy & Johnson, of Rockford, and Bruce E. Keller, of Keller & Lathe, of Dixon, for appellants.

Gary R. Gehlbach, Charles T. Beckman, and Douglas E. Lee, all of Ehrmann, Gehlbach & Beckman, of Dixon, for appellees Immanuel Lutheran Church of Dixon and Salvation Army.

Wayne R. Whitmore, Jr., of Whitmore & Engels Law Office, of Mendota, for appellee Estate of Charlotte Herwig.

Larry Johnson, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for Estate of Robert W. Ramsdell.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Wesley B. Herwig, Kenneth Herwig, Evelyn Needham, Carrie Ramsdell, James W. Pankhurst, and Robert W. Ramsdell, brought an action for specific performance of a written settlement agreement dated December 20, 1976, which they made with decedent, Charlotte Herwig. The agreement involved the exchange of a life estate for a quitclaim deed. Plaintiffs sought execution and delivery of the quitclaim deed against the estate. Defendants, Dixon National Bank and Joel Johnson as co-executors of decedent's estate, and Luella M. Gardner, Julia Wade, Jill McNeill, John Card, William Card, the First United Methodist Church of Dixon, Immanuel Lutheran Church of Dixon, and the Salvation Army, as residual beneficiaries under decedent's will, claimed that the agreement between plaintiffs and the decedent was void for lack of consideration and barred by the statute of limitations. Therefore, defendants assert ownership of the property under the residuary clause of decedent's will. Both parties filed motions for summary judgment in the trial court. The court's final judgment favored defendants. We reverse and remand.

On March 31, 1930, William R. Herwig, and his wife, Minnie Herwig, executed a warranty deed conveying to their son, Harry R. Herwig, a parcel of property located in Lee County (Lee County property). A life estate was conveyed to Harry, and, upon Harry's death, his "present wife" was to receive rentals, issues, income and profits of said lands for the remainder of her natural lifetime. The remainder in fee of the land was to pass to those heirs at law under the statute of descent of the State

of Illinois in force at Harry's death, with the exception that "said wife" shall not be counted as one of those heirs.

At the time of this deed's execution, Harry's wife was Blanche Herwig. Blanche died in 1952, and Harry married Charlotte Herwig. Harry died on January 15, 1976, leaving Charlotte as his sole heir. Excluding Charlotte, Harry was survived by his sisters, Anna Pankhurst, Bessie Ramsdell, and Carrie Ramsdell, his nephews, Wesley B. Herwig and Kenneth Herwig, and his niece, Evelyn Needham (the remaindermen).

On December 20, 1976, the remaindermen entered into an agreement with Harry's widow, Charlotte Herwig. The agreement, which was recorded in Lee County on December 21, 1976, indicates that Charlotte "executed" a quitclaim deed on the remaindermen's behalf in return for a life estate in the Lee County property. According to plaintiffs, the parties entered into the agreement in order to alleviate confusion that existed over the ownership of the Lee County property after Henry's death.

Charlotte Herwig died on January 25, 1988. On September 12, 1988, the remaindermen filed a petition for an order directing the co-executors of Charlotte's estate to execute a quitclaim deed in fulfillment of the prior agreement reached between Charlotte and the remaindermen. Defendants filed a petition to quiet title alleging that they should receive the Lee County property as beneficiaries under the residuary clause of Charlotte's will. In addition, defendants set forth two affirmative defenses in response to the remaindermen's claim to the property.

First, defendants asserted that the remaindermen lacked consideration to make the prior agreement with Charlotte because they never obtained an interest in the property through the 1930 warranty deed. Second, defendants argue that, notwithstanding the validity of the remaindermen's agreement with Charlotte, more than 10 years have passed since performance was required on the contract and, therefore, plaintiffs were barred from bringing an action on the contract pursuant to section 13—206 (Ill. Rev. Stat. 1991, ch. 110, par. 13—206).

The trial court determined the language in the deed from William and Minnie Herwig to Harry Herwig to be, as a matter of law, clear and unambiguous. According to the trial court, the language in the deed only restricted Harry's "present wife" to a life estate. Since, at the time of the deed's execution, Blanche was Harry's "present wife," the restriction did not apply to Charlotte, Harry's second wife. Therefore, Charlotte took fee simple title to the Lee County property under the remaindermen clause of the deed because she was Harry's sole heir. If Charlotte owned the property in fee simple, then the 1976 agreement failed for a lack of consideration because the plaintiffs were not in a position to grant Charlotte a life

estate. Moreover, the plaintiffs could not claim, in good faith, that the 1930 warranty deed was somehow ambiguous and, therefore, consideration for the agreement rested in the settlement of a legitimate dispute. In light of this reasoning, the court held that plaintiffs lacked consideration necessary to enter into a quitclaim agreement with Charlotte in 1976 and denied plaintiffs' petition for an order directing the co-executors to complete decedent's contract to convey the Lee County property. The court did not consider the uncontroverted evidence regarding the intent of the grantors presented by plaintiffs. The court also granted defendants' petition for declaratory judgment on the matter, granted defendants' motion for partial summary judgment, and entered a final judgment in defendants' favor.

On appeal, plaintiffs assert error in the trial court's failure to find adequate consideration for the 1976 settlement agreement and error in the trial court's grant of summary judgment in defendants' favor. Before addressing these issues, we first examine defendants' claim that regardless of the validity of the contract, its enforcement is barred by the statute of limitations.

Citing section 13–206 (Ill. Rev. Stat. 1991, ch. 110, par. 13–206), defendants argue that plaintiffs' action is time barred because it was not brought within 10 years after the cause of action accrued. According to defendants, the cause of action accrued on the date the agreement was signed in 1976, and the action had not been brought until September 12, 1988. Plaintiffs, on the other hand, dispute the application of section 13–206 to the instant case because that section relates to personal actions rather than actions which involve real property. Instead, plaintiffs argue for the application of section 13–103, which provides seven years to commence an action for the recovery of lands upon termination of an intervening estate. (Ill. Rev. Stat. 1991, ch. 110, par. 13–103.) Under this statute, the action would not accrue until Charlotte's death. Plaintiffs also argue for the application of section 13–118, which provides a 40-year limitation for actions establishing an interest in real estate against the holder of the record title. Ill. Rev. Stat. 1991, ch. 110, par. 13–118.

We determine that plaintiffs' action is not barred by the statute of limitations because the action did not accrue until Charlotte's death. First, the agreement between Charlotte and the remaindermen does not provide a time frame within which Charlotte was to have delivered the quitclaim deed. Plaintiffs admit they cannot find the quitclaim deed, and they do not know whether Charlotte in fact ever executed and delivered such a quitclaim deed. However, without a clause demanding *delivery* of the quitclaim deed within a certain period of time, the remaindermen could not say that Charlotte had breached the contract until such time as her life

estate terminated. The absence of the mentioned quitclaim deed does not mean that the agreement is invalid. The agreement amounts to a contract to convey an interest in land. The agreement establishes that the interest in this case will ripen upon termination of an intervening life estate. All that needed to be done in order for the remaindermen to acquire title was the accomplishment of a delivery and acceptance of the quitclaim deed. *Gallagher v. Girote* (1961), 23 Ill. 2d 170.

■ Generally, the statute of limitations begins to run when facts exist which authorized the bringing of an action. (*Schreiber v. Hackett* (1988), 173 Ill. App. 3d 129, 131.) In the present case, the remaindermen never demanded delivery of the quitclaim deed after signing the agreement, no specific time was stated for the delivery of the deed, and Charlotte did not give the remaindermen reason to believe that she would not deliver the quitclaim deed. Therefore, facts did not exist which authorized the bringing of an action until it was clear that a quitclaim deed would not be received, *i.e.*, upon her death.

Second, as we have stated, this contract amounts to a settlement of ownership interests in real estate. Therefore, under either of the statutes cited by plaintiffs, the action would not yet be time barred.

■ We next address the trial court's ruling that plaintiffs lacked consideration to make the 1976 agreement with Charlotte. Contrary to the trial court, we determine that the agreement was supported by sufficient consideration. The compromise of a disputed claim, even if that claim is not valid, will serve as sufficient consideration for the formation of a contract as long as that claim is made in good faith. *Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 546.

This appeal derives from plaintiffs' opposition to a grant of summary judgment in defendants' favor. The purpose of summary judgment is not to try the issues, but to determine whether any triable issues exist. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 416; *Quinton v. Kuffer* (1991), 221 Ill. App. 3d 466, 470.) A motion for summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 508.) An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. (*Quinton*, 221 Ill. App. 3d at 471.) The trial court's decision to grant or deny a motion for summary judgment is not discretionary. (*Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824.) Rather, the review-

ing court must apply the *de novo* standard of review and consider anew the facts and law related to the case. (*Shull,* 223 Ill. App. 3d at 824; *Quinton,* 221 Ill. App. 3d at 471.) In the present case, the uncontroverted evidence concerning the written agreement between the plaintiffs and Charlotte establishes that the plaintiffs had a good-faith basis upon which to claim an interest in the property. Therefore, valid consideration existed for the formation of the 1976 settlement agreement. As a matter of law, we determine that summary judgment should have been entered for plaintiffs, rather than defendants.

■ We determine that, as a matter of law, valid consideration existed for the 1976 settlement agreement because a latent ambiguity in the 1930 deed gave rise to a valid claim regarding the contract's meaning. A contractual provision is said to be latently ambiguous where extrinsic evidence must be used in order to show that language which appears on its face to be clear and unambiguous is actually uncertain in meaning and may refer to different subjects. (*South Parkway Building Corp. v. South Center Department Store, Inc.* (1958), 19 Ill. App. 2d 14.) We may consider extrinsic evidence in order to ascertain the existence of a latent ambiguity and resolve its meaning. (*De Kalb Bank v. Purdy* (1988), 166 Ill. App. 3d 709.) In general, a court should construe a grantor's intention from the language of the deed itself. (*Bean v. Boudreau* (1987), 152 Ill. App. 3d 740, 742.) However, in construing a written instrument, a court may place itself in the parties' position in order to understand their intent from the language used. *South Parkway Building Corp.,* 19 Ill. App. 2d at 20.

■ When we place ourselves in the parties' position in the present case, we find that the phrase "present wife" becomes a latent ambiguity when considered in the light of extrinsic evidence which tends to show that the grantors intended to keep the property in the family bloodline. The phrase, on its face, seems to refer to Blanche Herwig. However, in light of the intention described above, the phrase could be read to refer to a larger category of individuals, *i.e.,* any of Harry's "present" wives. According to the trial court, use of the phrase "present wife" clearly identifies the intent of the grantors to exclude any past or future wife of Harry Herwig. In the trial court's view, the use of the phrase avoids possible ambiguity which could occur if Harry Herwig had married another woman named Blanche Herwig after the first Blanche Herwig died. In our view, this problem could more easily have been avoided by using middle initials and other identifying characteristics. However, if the true intent of the grantors was to keep the property in the bloodline, then their decision to use a more broad, descriptive phrase to identify the recipient

of the subsequent life estate was a deliberate one. If interpreted to apply at the time of its reading, then the grantors' intent would be fulfilled by preventing the vesting of a fee simple interest in any of Harry's "present wi[ves]."

Once the trial court decided to reach outside the four corners of the deed in order to define Blanche as the "present wife," it also should have examined, *but did not*, other credible evidence speaking to that definition. Had it done so, it should have considered plaintiffs' uncontroverted evidence which indicated that the intent of the grantors was to keep the deeded property in the family bloodline. For example, language in the deed itself not only excludes Harry's wife as a remainderman, but it also excludes any adopted children. These exclusions arguably indicate an intent to keep the property in the family bloodline, and, following this reasoning, one would expect that the grantors would also intend to exclude Harry's future wives.

The trial court's ruling as it presently stands would interpret the deed to exclude Blanche Herwig as well as any and all of his adopted children, but would *not* exclude those wives whom the grantors could not have known about when the deed was executed. This result is not a reasonable one if the grantors intended to keep the property in the family bloodline. Furthermore, in support of this position, plaintiffs assert that William and Minnie Herwig deeded five other plots of land to their other children, four of which used the exact language as that contained in Harry's deed. Thus, the trial court's interpretation would have the net effect of ascribing to the grantors a desire to deny a fee simple interest in the property to all of their children's wives and any and all of their adopted children while, at the same time, permitting a fee simple interest in any unknown future wives their children may marry. We cannot see how the grantors would have such an intent from the facts in the present case, and plaintiffs, therefore, could argue in good faith that no such interpretation was intended. Therefore, sufficient consideration existed in the making of the 1976 settlement agreement because the remaindermen were involved in a disputed claim asserted in good faith.

In our view, the parties were on equal footing when they made the 1976 agreement. All the individuals involved had equal access to the 1930 deed to Harry Herwig, and all parties involved were represented by counsel. Furthermore, nothing on the record indicates that the remaindermen kept any information from Charlotte or somehow committed a fraud upon her. Therefore, it is unlikely that plaintiffs' claim to the property completely lacked merit. It is apparent that

Charlotte enjoyed her life estate under the terms of the agreement without incident and without attacking her ownership interest. Moreover, there is no evidence that plaintiffs exerted any undue influence on Charlotte in obtaining her signature on the agreement. Charlotte fully enjoyed the benefit of the agreement, and, thus, the residuary beneficiaries and the co-executors of Charlotte's estate are estopped from denying the existence of that agreement or performing its obligations. *Wasserman v. Autohaus on Edens, Inc.* (1990), 202 Ill. App. 3d 229.

Therefore, we reverse the final judgment entered in defendants' favor. We determine that the settlement agreement was supported by adequate consideration. We determine the statute of limitations is inapplicable. We direct the trial court to grant plaintiffs' motion for partial summary judgment and to grant any further relief consistent with this opinion.

The judgment of the circuit court of Lee County is reversed, and the cause is remanded.

Reversed and remanded.

GEIGER and BOWMAN, JJ., concur.