No. 2--97--0031

    

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

LINDA KOLTES,     ) Appeal from the Circuit Court

) Kane County.

      Plaintiff-Appellant, ) 

)

v. ) No.  94--MR--0133   

)

ST. CHARLES PARK DISTRICT, )

)

Defendant-Appellee ) Honorable

) Timothy Q. Sheldon,

(George Wolk, Defendant). ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Linda Koltes, appeals from the December 9, 1996, order of the circuit court of Kane County granting summary judgment in favor of defendant St. Charles Park District.  The plaintiff had filed suit against the defendant, alleging that she was injured as a result of the design and maintenance of the defendant's golf course.  The trial court entered summary judgment on behalf of the defendant, ruling that it was immune from liability pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/1--101 
et
 
seq
. (West 1996)).  On appeal, the plaintiff argues that the defendant is not immunized under the Act as its conduct herein was a ministerial function and was performed in a willful and wanton manner.  We affirm.

On March 30, 1994, the plaintiff filed her complaint in the circuit court of Kane County.  As subsequently amended, the complaint alleged that, on July 16, 1993, the plaintiff was struck by an errant golf ball hit by George Wolk, a member of her  foursome.  The complaint alleged that, at the time of the accident, she was standing in a designated "standing area" near the first tee at the St. Charles Park District Pottawatomie Golf Course.  This "standing area" consisted of a rock formation, a trash can, and a spike cleaner.  The plaintiff alleges that the "standing area" was located 75 yards in front of and to the left of the men's first tee. The plaintiff alleged that the design of the first tee of the golf course "lured" people to wait in the "standing area," even though this area was within the possible flight zone for golf balls struck from the first tee.  The complaint alleged that the defendant's conduct was willful and wanton in that it (1) failed to warn the plaintiff that the designated "standing area" was unprotected from golf balls struck from the first tee; (2) failed to provide fencing in the "standing area"; and (3) failed to alter the design of the first tee, even though it knew that a golf ball had previously struck an individual waiting in the "standing area."   On December 8, 1994, the defendant filed its answer to the plaintiff's complaint, denying all material allegations.  The defendant also denied that there was a designated "standing area" by the first tee.  

On October 31, 1996, the defendant filed a motion for summary judgment.  In its motion, the defendant contended that (1) the plaintiff's claim was barred by the 10-year construction statute of repose (735 ILCS 5/13--214 (West 1996)); (2) the decision to make improvements to the golf course was discretionary under the Act; and (3) its alleged misconduct was not willful and wanton.  The defendant also argued that there had been no other reported cases of injury due to errant golf balls in the area where the plaintiff was injured.  In support of its motion, the defendant provided transcripts of the deposition testimony of the plaintiff and golf professional Jim Wheeler.  

In her deposition, the plaintiff testified that, prior to her injury, she walked to the "standing area" as she awaited her turn to tee off.  The "standing area," which was about 10 to 15 yards from the women's tee, did not have any chairs or wooden benches.  Although she understood that she was to stand behind and out of the way of players who are teeing off, she waited in the "standing area" while the other members of her foursome were teeing off because she felt that the area was safe.  

Wheeler testified that he had been the head golf professional at the Pottawatomie Golf Course for 15 years.  According to Wheeler, the golf course was constructed during the 1930s.  He testified that the area where the plaintiff was injured was not an area for spectators.  He had not received any complaints about the area in question.  Furthermore, the area in question was not subject to more injuries than the other areas of the golf course.  However, Wheeler was aware that, prior to this incident, one other person had been struck by an errant golf ball in the same general area of the golf course.  He testified that this person was not injured.  

In response to the defendant's motion, the plaintiff argued that (1) the statute of repose was inapplicable as it applied only to cases involving negligent design and not to cases involving willful and wanton conduct; (2) the defendant was not immune from liability under the Act as the maintenance of the golf course was a ministerial function and not discretionary; and (3) a genuine issue of material fact existed as to whether the defendant's conduct was willful and wanton.  

In support of her argument, the plaintiff relied upon the affidavit of R. Gordon Leedy, the director of design at Thompson Dyke & Associates, a firm which deals primarily with municipal and park planning.  Leedy had been a site coordinator with Nicklaus Design for four years.  Leedy opined that the area where the plaintiff was injured was a "potential flight zone."  Furthermore, he stated that the defendant maintained the area in a manner which gave the false impression that the area was protected from errant tee shots.  During his deposition, however, Leedy acknowledged that the area was not explicitly designated as a "standing area" for spectators.  He also testified that there were no published standards for the design and construction of golf courses in the 1930s.  

On December 9, 1996, following oral argument, the trial court granted summary judgment in favor of the defendant.  The trial court explained its ruling as follows:

"It would appear to the Court that this was a discretionary act which does bring it within the purview of the section cited of the Tort Immunity Act.

Also, I think *** there is that specific definition on willful and wanton which would cause motion for summary judgment to apply."

The plaintiff filed a timely notice of appeal.

The plaintiff's first argument on appeal is that a genuine issue of material fact exists as to whether the defendant's actions were discretionary.  The plaintiff argues that, once the defendant carried out its plan to construct a "standing area," its actions became ministerial and were therefore not immune under the Act.  The defendant argues, however, that the decision whether to provide warnings or fencing or to alter the design of the first tee was discretionary and therefore immunized under the Act.  

At the outset, we note that the purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists.  
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986).  Summary judgment is appropriate when the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1996).  In deciding whether to grant summary judgment, the reviewing court must view the evidence in a light most favorable to the nonmoving party.  
Turner v. Roesner
, 193 Ill. App. 3d 482, 487 (1990).  The disposition of a summary judgment motion is not discretionary, and the standard of review is 
de
 
novo
.  
Quinton v. Kuffer
, 221 Ill. App. 3d 466, 471 (1991).  

Sections 2--109 and 2--210 of the Act grant immunity to public entities for the performance of discretionary functions.  745 ILCS 10/2--109, 201 (West 1996).  These sections provide, in pertinent part:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."  745 ILCS 10/2--109 (West 1996).

"Except as otherwise provided by Statute, a public employee serving in a position involving *** the exercise of discretion is not liable for an injury resulting from his act or omission *** when acting in the exercise of such discretion even though abused."  745 ILCS 10/2--201 (West 1996).

The determination whether acts are discretionary or ministerial must be made on a case-by-case basis.  
Snyder v. Curran Township
, 167 Ill. 2d 466, 474 (1995)
.  Discretionary acts are those which are unique to a particular office and involve the exercise of judgment.  
Kennell v. Clayton Township
, 239 Ill. App. 3d 634, 639 (1992).  Ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.  
Snyder
, 167 Ill. 2d at 474.  Where tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as "discretionary."  
Snyder
, 167 Ill. 2d at 474.

The plaintiff in the case at bar argues that the defendant's act of constructing a "standing area" was ministerial and therefore the defendant had a duty to construct the area with reasonable care.  The plaintiff argues that the defendant was willful and wanton in that it failed to install fencing at the "standing area"; failed to redesign the first tee; and failed to warn patrons of the golf course of the hazards of errant golf balls. However, the plaintiff has not cited any case law, statute, or regulation which imposes such a duty upon the defendant to provide fencing or warnings for the area in question.  In addition, the plaintiff has not shown that there was a prescribed method which was to be followed during the design or construction of the golf course in question.  As these decisions were not determined in a prescribed manner or in obedience to the mandate of legal authority, they were left to the discretion and judgment of the defendant's employees.  See 
Kennell
, 239 Ill. App. 3d at 639.  Accordingly, we conclude that the trial court properly found that the defendant's actions were discretionary.

In so ruling, we distinguish 
Snyder v. Curran Township
, 167 Ill. 2d 466 (1995).  In 
Snyder
, the supreme court held that the doctrine of discretionary immunity does not provide absolute immunity to municipalities for the negligent placement of traffic warning devices.  167 Ill. 2d at 467.  The court in 
Snyder
 concluded that the defendant's placement of a road sign was a ministerial act as it was performed in a prescribed manner and was subject to the Illinois Manual on Uniform Traffic Control Devices  (see 92 Ill. Adm. Code §546.100 
et seq
. (Supp. 1986)) and the Illinois Vehicle Code (625 ILCS 5/1--100 
et seq.
 (West 1996)).  167 Ill. 2d at 474.  Unlike 
Snyder
, however, the defendant's decision herein to provide fencing or warnings or to alter the design of the first tee was not subject to any statutory or regulatory guidelines.  As the defendant's actions could not be performed in a prescribed manner, they cannot be classified as a ministerial function.  

The plaintiff alternatively argues that, pursuant to section 3--103(a) of the Act, the defendant breached its duty to construct and maintain the "standing area" in a reasonable and safe manner. Section 3--103(a) of the Act provides:

"A local public entity is not liable *** for an injury caused by the *** design of *** public property where the *** design has been approved in advance of the construction *** by *** some *** employee exercising discretionary authority to give such approval ***.  The local public entity is liable, however, if after the execution of such *** design it appears from its use that it has created a condition that is not reasonably safe."  745 ILCS 10/3--103(a) (West 1996).

This section, however, does not apply in cases involving injuries upon recreational property.  
Straub v. City of Mt. Olive
, 240 Ill. App. 3d 967, 975 (1993).  Rather, section 3--106 of the Act delineates when a remedy is available to a person injured while using recreational property.  
Straub
, 240 Ill. App. 3d at 975.  Section 3--106 provides, in pertinent part:

"[A] local public entity *** is [not] liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, *** unless such local entity *** is guilty of willful and wanton conduct proximately causing such injury."  745 ILCS 10/3--106 (West 1996).

The legislative intent of section 3--106 is to immunize public entities from liability from simple negligence in areas where public activities, such as activities of a sportive nature, are permitted.  
See 
John v. City of Macomb
, 232 Ill. App. 3d 877, 880 (1992).  As the property in question is used for a sportive activity, we conclude that section 3--106, rather than section 3--103(a), governs the case at bar.  

 We therefore turn to a consideration of the plaintiff's second argument on appeal, which is that a genuine issue of material fact exists as to whether the defendant's conduct in the instant case was willful and wanton.  The plaintiff argues that the defendant had notice that, prior to the plaintiff's injury, another person was struck by an errant golf ball while standing in the same general area.  The plaintiff argues that, despite having knowledge of this incident, the defendant failed to remedy this unsafe condition.  The plaintiff concludes that such a failure showed an utter indifference for her safety.  

As noted above, section 3--106 of the Act provides that a public entity is liable for injuries based upon a condition on property used for recreational purposes, if the entity is guilty of willful and wanton conduct which proximately causes injury.  745 ILCS 10/3--106 (West 1996).  Section 1--210 of the Act provides, in pertinent part: 

" 'Willful and wanton conduct' *** means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1--210 (West 1996).  

In order to sufficiently plead a cause of action for willful and wanton conduct, a plaintiff must allege that a defendant engaged in a "course of action" that proximately caused the injury.  
Lerma v. Rockford Blacktop Construction Co.
, 247 Ill. App. 3d 567, 572-73 (1993).  A public entity may be found to have engaged in willful and wanton conduct only if it has been informed of a dangerous condition, knew others had been injured because of the condition, or if it intentionally removed a safety device or feature from property used for recreational purposes.  
Winfrey v. Chicago Park District
, 274 Ill. App. 3d 939, 945 (1995).  

In 
Lerma v. Rockford Blacktop Construction Co.
, 247 Ill. App. 3d 567, 568-569 (1993), two children drowned in a river which was crossed by a dam operated by a park district.  
The administrators of the childrens' estate brought an action against the park district alleging that it was liable for willful and wanton conduct because the defendant knew of the hazards of the dam and failed to provide adequate warning or prohibit entry to those entering the river.  
Lerma
, 247 Ill. App. 3d at 569.  The trial court dismissed the plaintiff's complaint, finding that the defendant's failure to act did not rise to the level of willful and wanton conduct.  
Lerma
, 247 Ill. App. 3d at 573.   

On appeal, we affirmed the trial court's ruling, finding that the defendant's failure to act upon its alleged knowledge of dangers did not demonstrate a "course of action" showing deliberate intention to cause harm.  
Lerma
, 247 Ill. App. 3d at 573.  In so ruling, we noted that the defendant's failure to act constituted "nonaction" or "an omission" which did not rise to the level of willful and wanton conduct.  
Lerma
, 247 Ill. App. 3d at 573.  We therefore concluded that the allegations of willful and wanton misconduct were properly dismissed.  
Lerma
, 247 Ill. App. 3d at 573.   In the case at bar, we also find that the defendant's "nonaction" did not rise to the level of willful and wanton conduct.  Although the defendant failed to alter the design of the first tee and failed to provide warnings and fencing in the area in question after the first incident, we do not find that such conduct constituted a "course of action" showing deliberate intention to cause harm to others or an utter indifference to the safety of others.  See 
Lerma
, 247 Ill. App. 3d at 573.  There was no evidence presented demonstrating that the "standing area" subjected the plaintiff to more danger than any other area of the course.  Although Wheeler testified that he was aware of one other person being struck by an errant golf ball in the same general area, this person was not injured.  He also testified that he had not received any complaints about the area in question and that this area was not subject to more errant golf balls than other areas of the golf course.  

In so ruling, we note that not every shot played by a golfer goes to the point where he intends it to go.  
Campion v. Chicago Landscape Co.
, 295 Ill. App. 225, 241 (1938).  However, the physical dangers of golf are diminished by long-standing traditions in which courtesy between the players prevails.  
Zurla v. Hydel
, 289 Ill. App. 3d 215, 221 (1997).  The plaintiff, herself, testified that she understood that she was to stand behind and out of the way of golfers who are teeing off.  However, she chose not to do so in the instant case and was therefore injured.  

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.