No. 2--97--0288

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

FRANK DINELLI and CAROL DINELLI, )  Appeal from the Circuit Court

)  of Lake County.

Plaintiffs-Appellants, )

)

v. )  No. 95--L--448  

)

)

COUNTY OF LAKE, ) Honorable

) Charles F. Scott,

Defendant-Appellee. ) Judge, Presiding.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiffs, Frank Dinelli and Carol Dinelli, appeal from the February 19, 1997, order of the circuit court of Lake County dismissing their complaint against the defendant, County of Lake (the County).  The complaint alleged that the County was negligent and willful and wanton in its design and maintenance of a midblock bicycle trail crosswalk.  Plaintiff Frank Dinelli was struck and injured by a motor vehicle while walking his bicycle across the crosswalk.  The trial court found that the crosswalk had been intended for recreational use and therefore concluded that the County was immune from liability pursuant to section 3--106 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3--106 (West 1996)).  The trial court also found that the plaintiffs’ allegations were insufficient to state a cause of action for willful and wanton conduct.  We affirm.

In their second amended complaint, the plaintiffs allege that, on September 23, 1994, Frank Dinelli was riding his bicycle in an easterly direction along the North Shore Bicycle Path (NSBP) in Libertyville.  The NSBP is a system of interconnected bicycle pathways in Lake County which utilizes abandoned railroad right-of-ways.  In 1994, the NSBP included a midblock crosswalk across Butterfield Road, approximately 240 feet south of the intersection of Butterfield Road and Illinois Route 176.  This crosswalk was allegedly designed and maintained by the County.  Street signs at the crosswalk warn motorists on Butterfield Road where the NSBP crosses the road.

As the plaintiff attempted to ride his bicycle across the crosswalk, he was struck by a northbound vehicle being driven by Louise Rejc.  According to witness Albert Stannard, at the time that the plaintiff attempted to cross the crosswalk, northbound traffic on Butterfield Road was stopped for a red light at the intersection of Illinois Route 176 and was backed up to a point south of the crosswalk.  Stannard testified that the plaintiff entered the crosswalk and proceeded to cross Butterfield Road while the northbound traffic remained stopped.  As the plaintiff was crossing the southbound lane, he was struck by Rejc’s vehicle.  Rejc was allegedly traveling northbound in the southbound lane in order to more quickly reach the left-turn lane at the intersection with Illinois Route 176.  As a result of the collision, the plaintiff suffered a broken hip, a broken pelvis, three fractured ribs, and other internal injuries requiring hospitalization for over six weeks.

Counts I and II of the plaintiffs’ second amended complaint alleged that the County was negligent in its design and maintenance of the NSBP’s midblock crosswalk on Butterfield Road.  In counts III and IV, the plaintiffs alleged that the County’s conduct in designing and maintaining the crosswalk had been willful and wanton.  Specifically, the plaintiffs alleged that the County (1) failed to use traffic and pedestrian counts in deciding where to place the crosswalk; (2) located the crosswalk in a high volume area; (3) installed the crosswalk without the recommendation of the county engineer; and (4) failed to design or plan the crosswalk in accordance with guidelines set forth in the Manual of Uniform Traffic Controls.  In counts I and III, Frank Dinelli sought relief for his personal injuries; in counts II and IV, Carol Dinelli sought relief for the loss of her husband’s services, society, companionship, and conjugal relationship.

On July 17, 1996, the County filed a motion for summary judgment as to counts I and II of the plaintiffs’ second amended complaint.  In its motion, the County asserted that the crosswalk was part of the NSBP and intended for recreational use.  As such, the County argued that it was immune from liability pursuant to section 3--106 of the Act (745 ILCS 10/3--106 (West 1996)).  Attached to the motion was the affidavit of Martin Buehler, the county engineer for Lake County.  In his affidavit, Buehler stated that the NSBP included the crosswalk across Butterfield Road.  Buehler also averred that the NSBP, including the crosswalk, was intended and permitted to be used by the citizens of Lake County for recreational purposes.

On September 18, 1996, the trial court denied the County’s motion for summary judgment.  On September 26, 1996, the County filed a motion requesting the trial court to reconsider its ruling.  The County also filed a motion to dismiss counts III and IV of the second amended complaint on the ground that the allegations were insufficient to support an action for willful and wanton conduct.  On October 23, 1996, the trial court granted the motion to reconsider and entered summary judgment on behalf of the County as to counts I and II.  On the same date, the trial court also granted the County’s motion to dismiss counts III and IV.  In granting the motion to dismiss, the trial court gave the plaintiffs leave to file an amended complaint.

On January 9, 1997, the trial court granted the plaintiffs leave to file a fourth amended complaint.  Counts I and II contained the same negligence allegations that were the basis of the earlier motion for summary judgment.  Counts III and IV again alleged willful and wanton conduct and contained the following additional allegations:  (1) that the County encouraged pedestrians to use the midblock crosswalk without the use of active traffic control devices on a roadway where the average daily traffic volume exceeded 20,000; (2) that the County failed to exclusively utilize the pedestrian crosswalks with active traffic control devices at the intersection of Butterfield Road and Illinois Route 176; and (3) that the County failed to remove the crosswalk after becoming aware of another incident in which a user of the crosswalk was struck by a motorist on Butterfield Road. 

On January 22, 1997, the County filed a motion to dismiss the fourth amended complaint.  The County argued that counts I and II had already been ruled upon and were barred under the doctrine of 
res
 
judicata
.  As to counts III and IV, the County again argued that the allegations were insufficient to demonstrate willful and wanton conduct.

On February 19, 1997, following a hearing, the trial court dismissed the plaintiffs’ fourth amended complaint.  Following the plaintiffs’ election to stand upon their fourth amended complaint, they filed a timely notice of appeal.

The plaintiffs’ first contention on appeal is that the trial court erred in entering summary judgment on behalf of the County as to counts I and II.  The plaintiffs argue that the County was not immunized under section 3--106 of the Act as the crosswalk was not intended to be used “recreationally.”  Rather, the plaintiffs argue that the crosswalk was intended as a traffic control device for the protection of pedestrians crossing Butterfield Road.  As such, the plaintiffs conclude that the County owed them a duty of ordinary care in designing and maintaining the crosswalk.

Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2--1005(c) (West 1996)
.  An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law.  
In re Estate of Herwig
, 237 Ill. App. 3d 737, 741 (1992).  The disposition of a summary judgment motion is not discretionary, and the standard of review is 
de
 
novo
.  
Quinton v. Kuffer
, 221 Ill. App. 3d 466, 471 (1991).

Section 3--106 of the Act provides as follows:

“Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury.”  745 ILCS 10/3--106 (West 1996).

Pursuant to this language, Illinois courts have held that municipalities are immune from liability for injuries occurring on public property that is intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property.  See 
Bubb v. Springfield School District 186
, 167 Ill. 2d 372, 380-81 (1995).  The applicability of section 3--106 is not solely dependent on whether the plaintiff was actively engaged in recreational activity at the time of the injury. 
Annen v. Village of McNabb
, 192 Ill. App. 3d 711, 713 (1990).  Moreover, section 3--106 may apply to injuries occurring upon nonrecreational facilities or structures that “increase the usefulness of public property intended or permitted to be used for recreational purposes.”  
Sylvester v. Chicago Park District
, No. 81138, slip op. at 7 (Ill. December 4, 1997).

In 
Sylvester v. Chicago Park District
, No. 81138 (Ill. December 4, 1997), our supreme court considered whether section 3--106 immunized the Chicago Park District from liability for injuries suffered by a pedestrian who tripped over a concrete parking abutment in a Chicago Park District parking lot.  At the time of her fall, the pedestrian was walking through the parking lot en route to a Bears game at Soldier Field.  
Sylvester
, slip op. at 2.  Although the supreme court acknowledged that the walkways and parking lots adjacent to Soldier Field were not primarily recreational, it noted that Soldier Field had a recreational purpose and that such facilities increased its usefulness.  
Sylvester
, slip op. at 7.  The court explained:

“Thus, under section 3--106 as amended, it is the character of the property as a whole that determines whether immunity applies. [Citation.]  In this case, an examination of the property as a whole indicates that the parking lot in which plaintiff fell was an integral part of the Soldier Field recreational facility.”  
Sylvester
, slip op. at 8.

The supreme court therefore concluded that the Chicago Park District was immune from the plaintiff’s suit pursuant to section 3--106.  
Sylvester
, slip op. at 11.

Numerous other appellate opinions have reached similar conclusions.  In 
Annen v. Village of McNabb
, 192 Ill. App. 3d 711, 712 (1990), the plaintiff was injured when a sink fell from the wall in a park restroom.  The reviewing court held that, even though the restroom facility was not intended to be used for recreational purposes, it increased the usefulness of the park.  
Annen
, 192 Ill. App. 3d at 713.  The court therefore concluded that section 3--106 immunized the municipality from liability.  
Annen
, 192 Ill. App. 3d at 713; see also 
Conoway v. Hanover Park Park District
, 277 Ill. App. 3d 896, 900 (1996) (plaintiff was barred from recovery when injured as a result of falling into a drainage ditch in a park);  
Lewis v. Jasper County Community Unit School District No. 1
, 258 Ill. App. 3d 419, 423 (1994) (plaintiff was barred from recovery when injured  as a result of falling against a pumphouse located on a school playground);  
Kirnbauer v. Cook County Forest Preserve District
, 215 Ill. App. 3d 1013, 1022-23 (1991) (plaintiff was barred from recovery when injured by a cable barricade restricting entry to a forest preserve access road).

On the basis of such authorities, as well as the evidence presented in the instant case, we conclude that the crosswalk was part of the NSBP system which was designed and implemented for recreational purposes.  In his affidavit, County Engineer Martin Buehler testified that the crosswalk was part of the NSBP and that the NSBP “was intended and permitted to be used by the citizens of Lake County for recreational uses.”  Even if the crosswalk itself was not intended for recreational use, it was nonetheless intended as a means to cross Butterfield Road for bicyclists and other pedestrians using the NSBP.  As such, the crosswalk certainly increased “the usefulness” of the NSBP.  See 
Sylvester
, slip op. at 7.  We therefore conclude that the crosswalk falls within the immunity provided by section 3--106.

In so ruling, we find 
Wojdyla v. City of Park Ridge
, 148 Ill. 2d 417 (1992) distinguishable.  In that case, our supreme court held that municipalities could be charged with liability for pedestrian injuries occurring in marked crosswalks.  
Wojdyla
, 148 Ill. 2d at 426.  The court noted that, for purposes of section 3--102(a) of the Act, pedestrians were owed a duty of care as intended users of the crosswalk.  
Wojdyla
, 148 Ill. 2d at 426.  Unlike 
Wojdyla
, however, the instant case concerns the applicability of section 3--106 rather than section 3--102(a).  The crosswalk herein does not connect two pedestrian sidewalks but instead connects a contiguous bike path.  Unlike a normal crosswalk, which is simply intended to aid pedestrians in crossing a roadway, this particular crosswalk permits users of the NSBP to continue to engage in recreational activity.  We therefore conclude that 
Sylvester
, rather than 
Wojdyla
, controls our resolution of the instant case, and we hold that the trial court properly entered judgment in favor of the County as to counts I and II of the plaintiffs’ second amended complaint.  As these counts were subsequently realleged in the plaintiffs’ fourth amended complaint, it was proper for the trial court to dismiss them.

The plaintiffs’ second contention on appeal is that the trial court erred in dismissing counts III and IV of their fourth amended complaint alleging willful and wanton conduct.  The plaintiffs argue that these counts alleged sufficient facts to demonstrate that the County was aware of the dangerous condition posed by the midblock crosswalk and subsequently failed to exercise ordinary care to remedy the danger.  Specifically, the plaintiffs alleged that the County failed to remove the crosswalk after becoming aware of a prior pedestrian-vehicle collision occurring in the crosswalk.  The plaintiffs conclude that such conduct constitutes an utter indifference for the safety of others.

Although the County failed to designate whether its motion to dismiss was brought pursuant to section 2--615 or section 2--619 of the Code of Civil Procedure (735 ILCS 5/2--615, 2--619 (West 1996)), it is clear from the record that the parties proceeded as if the motion was brought pursuant to section 2--615.  A motion to dismiss under section 2--615 attacks only the legal sufficiency of the complaint.  
Urbaitis v. Commonwealth Edison
, 143 Ill. 2d 458, 475 (1991).  In ruling on a section 2--615 motion to dismiss, the trial court should deny the motion unless it appears that no set of facts can be proved which would entitle the plaintiff to recover.  
McGrath v. Fahey
, 126 Ill. 2d 78, 90 (1988).  In making this determination, the trial court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. 
McGrath
, 126 Ill. 2d at 90.

As noted above, a municipality may be held liable for injuries occurring on property used for recreational purposes when the injury is the proximate result of the municipality’s willful and wanton conduct.  745 ILCS 10/3--106 (West 1996).  Section 1--210 of the Act defines willful and wanton conduct as follows:

“ ‘Willful and wanton conduct’ *** means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.”  745 ILCS 10/1--210 (West 1996).

In order to sufficiently plead a cause of action for willful and wanton conduct a plaintiff must allege that a defendant engaged in a “course of action” that proximately caused the injury.  
Lerma v. Rockford Blacktop Construction Co.
, 247 Ill. App. 3d 567, 572-73 (1993).  A public entity may be found to have engaged in willful and wanton conduct only if it has been informed of a dangerous condition, knew others had been injured because of the condition, or if it intentionally removed a safety device or feature from property used for recreational purposes. 
Koltes v. St. Charles Park District
, 293 Ill. App. 3d 171, 178 (1997).

In 
Lerma v. Rockford Blacktop Construction Co.
, 247 Ill. App. 3d 567, 568-69 (1993), two children drowned in a river which was crossed by a dam operated by a park district.  The administrator of the children’s estate brought an action against the park district predicated upon willful and wanton conduct, alleging that the park district knew of the hazards of the dam and failed to provide adequate warning or prohibit entry to those entering the river.  
Lerma
, 247 Ill. App. 3d at 569.  This court held that such allegations were insufficient as they failed to demonstrate a “course of action” by the park district showing a deliberate intention to cause harm.  
Lerma
, 247 Ill. App. 3d at 573.  In so ruling, we noted that the park district’s failure to act constituted “nonaction” or “an omission” which did not rise to the level of willful or wanton conduct.  
Lerma
, 247 Ill. App. 3d at 573.

More recently, in 
Koltes v. St. Charles Park District
, 293 Ill. App. 3d 171, 178-79 (1997), this court again found that a park district’s “nonaction” did not rise to the level of willful and wanton conduct.  In that case, the plaintiff was injured when she was struck by an errant golf ball while waiting in a “standing area” near the first tee of a golf course owned by a park district.  
Koltes
, 293 Ill. App. 3d at 173.  As in the instant case, the plaintiff in 
Koltes
 alleged that the park district had knowledge of a prior injury in which another person was struck by an errant golf ball while standing in the same general area.  
Koltes
, 293 Ill. App. 3d at 177.  We held that the park district’s failure to alter the design of the golf tee or to provide warnings and fencing after the first incident did not constitute a “ ‘course of action’ showing deliberate intention to cause harm to others or an utter indifference to the safety of others.”  
Koltes
, 293 Ill. App. 3d at 179.

In light of these authorities, we conclude that the County’s alleged misconduct in the instant case did not rise to the level of willful and wanton.  Although the plaintiffs’ complaint alleges a prior injury occurring in the crosswalk, it does not plead facts demonstrating that it had any similarity to the injury suffered herein; nor was there any allegation that this prior incident was in any way related to the crosswalk’s location or design.  The plaintiffs did not plead facts demonstrating that the County knew of any other complaints relating to the crosswalk.  We conclude that the County’s “nonaction” did not rise to the level of willful and wanton conduct showing an utter indifference to the safety of others.  See 
Lerma
, 247 Ill. App. 3d at 573.  Additionally, we find that the plaintiffs’ remaining allegations relating to the County’s failure to conduct traffic studies or utilize traffic control devices did not rise to the level of willful and wanton conduct.

Moreover, we find that the plaintiffs’ authorities are distinguishable from the case at bar.  Unlike the instant case, in both 
Scarano v. Town of Ela
, 166 Ill. App. 3d 184, 191 (1988) and 
Carter v. New Trier East High School
, 272 Ill. App. 3d 551, 557 (1995), the plaintiffs alleged multiple prior injuries that occurred in the same precise manner and as a result of the same defective condition; the defendants in these cases had also allegedly received numerous complaints of the dangerous conditions.  In the instant case, the plaintiffs have vaguely alleged only one prior injury that may or may not have any similarity to Frank Dinelli’s accident.  We conclude that such allegations simply do not demonstrate a “course of action” by the County and decline to disturb the trial court’s rulings as to these counts.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS, J., concurs.

JUSTICE RATHJE, concurring in part and dissenting in part:

While I concur in the majority’s affirmance of the trial court’s granting of summary judgment on counts I and II, I must respectfully dissent from the majority’s affirmance of the motion to dismiss regarding counts III and IV which, in my view, sufficiently allege willful and wanton misconduct against defendant regarding the design and maintenance of the subject midblock crosswalk. 

As the majority notes, to successfully allege willful and wanton misconduct, a plaintiff must allege that the defendant engaged in a 
course of action
 that proximately caused the injury.  Neither the Act nor the cases cited by the majority define “course of action,” which apparently is a term of art.  Black’s Law Dictionary, Abridged Fifth Edition, and Webster’s Third New  International do not list the term “course of action.”  Indeed, the dissent in 
Benhart v. Rockford Park District
, 218 Ill. App. 3d 554, 560 (1991) referred to the term, using quotation marks.  

Here, plaintiffs allege that defendant acted willfully and wantonly in the following respects:

“a. Installed the crosswalk without utilizing pedestrian volume counts or average daily traffic volume counts;

failed to utilize the controlled intersection of Butterfield Road and 176 and encouraged pedestrians to cross without the use of active traffic control devices on the roadway where the average daily traffic volume exceeded 20,000;

encouraged users of the crosswalk to traverse Butterfield Road at an unsafe location;

failed to remove the mid-block crosswalk after becoming aware of another incident where a user of the crosswalk was struck by a motorist on Butterfield Road;

failed to exclusively utilize the pedestrian crosswalks with active control devices less than 240 feet from the mid-block cross.”

In essence plaintiffs allege that defendant created an inherently dangerous situation by designing and maintaining the crosswalk and did nothing to alter it after becoming aware of an injury to a person using the crosswalk.  These allegations set out a reckless “course of action” taken by defendant which, if proved, would result in defendant’s liability to plaintiffs.

The majority takes plaintiffs to task for not more explicitly describing the alleged incident in which a prior user of the crosswalk was struck by an automobile.  It would appear that the majority is essentially requiring plaintiffs to prove their case in the pleadings.  The exact nature of the alleged prior accident and the identity of the person injured are proper subjects for discovery and are not essential in the pleadings.

Further, the cases cited by the majority are readily distinguished from the appeal at bar.  In 
Lerma v. Rockford Blacktop Construction Co.
, 247 Ill. App. 3d 567 (1993), this court characterized the defendant park district’s conduct as a “nonaction” or “omission.”  
Lerma
, 247 Ill. App. 3d at 573.  The 
Lerma
 court concluded that the park district’s failure to act upon alleged knowledge of dangers did not “demonstrate a course of action showing deliberate intention to cause harm or conscious disregard for the safety of others.”  
Lerma
, 247 Ill. App. 3d at 573.

In contrast, the alleged tortious conduct in the instant appeal involved, in part, actions or commissions on defendant’s part.  Most importantly, defendant created and maintained the allegedly dangerous crosswalk.  Moreover, 
Lerma
 did not involve allegations of prior injuries/deaths at the subject location in the river.  Here, defendant was allegedly aware of an accident involving a motor vehicle and a person using the crosswalk.

In 
Koltes v. St. Charles Park District
, 293 Ill. App. 3d 171 (1997), a case in which defendant’s motion for
 
summary
 
judgment
 had been granted, this court found that the defendant park district’s nonaction did not rise to the level of willful and wanton conduct.  As discussed above, the instant defendant is alleged to have 
acted
 in willful and wanton manner. Thus, 
Koltes
 is distinguishable in that regard.  Further, the 
Koltes
 court also focused on the lack of evidence that the standing area in which plaintiff was situated subjected her to any more danger than any other area of the golf course.  In the instant appeal, the complaint’s allegations indicate that, if plaintiff was to utilize the bike trail as intended, he had to use the midblock crosswalk, a circumstance which presumably subjected him to far greater danger than was present at other locations on the trail.

If section 1--210 of the Act is to be at all viable, then causes of action, such as the instant one, must be permitted to make their way past the pleading stage.