13 June 2000

No. 2--99--0645

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

A.D., a Minor, by his         ) Appeal from the Circuit Court

Parent, Guardian and Next     ) of Kane County.

Friend, J.D.,                 )

                              )

Plaintiff-Appellee,      )

                              )      

v.                            ) No. 97--L--0301         

                              ) 

THE FOREST PRESERVE DISTRICT  )                  

OF KANE COUNTY, ILLINOIS,     ) Honorable

                              ) Gene L. Nottolini,

Defendant-Appellant.     ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

The defendant, The Forest Preserve District of Kane County, Illinois, appeals from a judgment entered upon a jury verdict in favor of the plaintiff, A.D., a minor, by his parent, guardian, and next friend, J.D., finding the defendant liable for injuries sustained by the plaintiff when he ran into a tree located in the defendant's forest preserve.  The defendant appeals the trial court's denial of its motions for a directed verdict and judgment notwithstanding the verdict.  We reverse.

The following facts are taken from the record.  On May 22, 1996, the plaintiff, who was eight years old, went to the Oakhurst Forest Preserve (owned by the defendant, a local public entity) with his classmates.  The plaintiff was injured when he ran into a honey locust tree while playing tag.  J.D., the plaintiff's guardian and next friend, filed a complaint alleging that the defendant was willful and wanton in allowing the continued growth of a thorny honey locust tree in a recreational part of the forest preserve.  The plaintiff sought recovery for pain and suffering, disfigurement, loss of normal life, and medical expenses.  The complaint alleged that the plaintiff had assigned his rights of recovery of medical expenses to his mother, J.D.

 Subsequently, the plaintiff filed an amended complaint removing the allegation regarding the assignment of J.D.’s right to recover medical expenses.  The plaintiff then filed a second amended complaint containing two counts.  Count I alleged that the defendant was willful and wanton in allowing the continued growth of a thorny honey locust tree in a recreational part of the forest preserve.   Count II sought recovery of the plaintiff’s medical expenses.  The plaintiff then amended his original complaint and attached a document assigning J.D.'s rights to recover medical expenses to her son, the plaintiff. 

The following evidence was heard at the trial.  The plaintiff testified that, as he was playing tag with his friends, he ran backwards, quickly turned around, and ran face first into a honey locust tree.  A thorn from the tree penetrated his sternum bone and lodged in his chest near his heart.  The thorn was later surgically removed from the plaintiff’s chest.

Jeff Perez, an Oakhurst Forest Preserve forest ranger employed by the defendant, testified that the honey locust tree at issue had long sharp thorns and it was not the type of tree that a person can lean a hand against or brace his back upon without injury.  Perez knew of the tree and its thorny condition.  Perez lived at the forest preserve and had regularly mowed the grass in the area of the tree for six to seven years before the incident.  The tree was the only one of its kind in that area of the forest preserve.  It was located in an area of the forest preserve where people would picnic and generally recreate.  The nearby picnic tables and trash cans were placed in the area by the defendant.  Perez stated that it was his job to remove any known hazard in or about the forest preserve and that he used his own judgment in making this determination.  A person need not become injured for him to know that something was a hazard.  Perez explained that if he saw a fallen branch across a trail he would consider it a hazard and remove it.  Perez took no action to remove the tree in question, place a fence around it, or place warning signs by the tree.  

John Schierra, a landscape architect, testified on behalf of the plaintiff.  Schierra stated that honey locust trees grew naturally and were commonly found throughout forest preserves.   The honey locust tree was a low-quality tree with low esthetic value and was not in danger of extinction.  Schierra opined that the tree at issue did not need to be removed, but the defendant could have allowed the grass around the tree to grow, creating a natural deterrent.  According to Schierra, other trees of the same type as the honey locust were kept and buffered in this manner in the defendant’s forest preserve.  Allowing the grass around the tree to grow naturally would have protected visitors from the thorns.  Schierra believed that the tree in question posed a hazard because it was exposed in a recreational space frequented by visitors who easily came in contact with it.

The jury returned a verdict in favor of the plaintiff and against the defendant, awarding the plaintiff $20,000 for past medical expenses, $5,000 for pain and suffering, $16,500 for disfigurement, and $500 for loss of normal life.  The defendant filed this timely appeal.

On appeal, the defendant argues, 
inter alia
, that the trial court erred by denying its motions for a directed verdict and judgment notwithstanding the verdict because the plaintiff failed to prove that the defendant owed a duty to the plaintiff or that its actions or inactions were willful and wanton.

We will not disturb a trial court's denial of motions for a directed verdict and judgment notwithstanding the verdict (judgment 
n.o.v.
) unless all of the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favored the movant that no contrary verdict based on the evidence could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510 (1967). 

In this case it is undisputed that the defendant was a local public entity and that the Oakhurst Forest Preserve was public property within the meaning of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1--206, 3--101 (West 1996)).  It is well settled that local public entities are not liable for ordinary negligence in the upkeep of their recreational areas; they are only liable for willful and wanton conduct.  See 
Bialek v. Moraine Valley Community College School District 524
, 267 Ill. App. 3d 857 (1994).  However, before the plaintiff can allege that the defendant's conduct was willful and wanton, the plaintiff must establish that the defendant owed a duty to the plaintiff. 
Bialek
, 267 Ill. App. 3d at 860.

Here, the defendant argues that it did not owe a duty to the plaintiff because the tree at issue was an open and obvious danger and the plaintiff was not foreseeably distracted.  However, because the plaintiff failed to sustain his burden of proof that the defendant's conduct was willful and wanton, we need not resolve the question of duty.

Section 3--106 of the Act provides, in part:

"[A] local public entity *** is [not] liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity *** is guilty of willful and wanton conduct proximately causing such injury."  745 ILCS 10/3--106 (West 1996).  

Section 1--210 of the Act defines willful and wanton conduct as follows:

" 'Willful and wanton conduct' *** means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1--210 (West 1996).

In order to establish willful and wanton conduct, a plaintiff must prove that a defendant engaged in a "course of action" that proximately caused the injury.  
Lerma v. Rockford Blacktop Construction Co.
, 247 Ill. App. 3d 567, 572-73 (1993).  A public entity may be found to have engaged in willful and wanton conduct only if it has been informed of a dangerous condition, knew others had been injured because of the condition, or if it intentionally removed a safety device or feature from property used for recreational purposes.  
Koltes v. St. Charles Park District
, 293 Ill. App. 3d 171, 178 (1997).

For example, in 
Lerma
, 247 Ill. App. 3d 567, the administrator of the estate of two children who had drowned in the defendant park district's dam alleged that the defendant knew of the hazards of the dam and failed to adequately warn and prohibit entry into the dam.  
Lerma
, 247 Ill. App. 3d at 569.   This court held that such allegations failed to demonstrate a "course of action" by the park district showing a deliberate intention to cause harm and, thus, did not rise to the level of willful and wanton conduct. 
Lerma
, 247 Ill. App. 3d at 573.

Further, in 
Koltes
, 293 Ill. App. 3d 171, a woman who had been injured as she stood in a "standing area" of a golf course owned by a park district alleged that the park district knew of a prior incident in which another person was struck by an errant golf ball while standing in the same area.  
Koltes
, 293 Ill. App. 3d at 177.  This court held that the park district's failure to alter the design of the golf tee or to provide warnings and fencing after the first incident did not constitute willful and wanton conduct.

More recently, in 
Dinelli v. County of Lake
, 294 Ill. App. 3d 876 (1998), a man who was struck by a car while using the bicycle-

trail crosswalk constructed by the defendant county alleged his injuries were caused by the county's willful and wanton conduct in designing and maintaining the crosswalk located in a busy section of a highway.  
Dinelli
, 294 Ill. App. 3d at 879.  The plaintiff also alleged that the county knew of a prior accident in the same crosswalk.   
Dinelli
, 294 Ill. App. 3d at 880.  We held that, although the county allegedly knew of a prior accident occurring in the crosswalk, the plaintiff failed to establish that it was similar to the plaintiff's accident, that it was related to the crosswalk's location or design, or that the county knew of any other complaints relating to the crosswalk.  Thus, we held that the plaintiff failed to sufficiently allege willful and wanton conduct.  
Dinelli
, 294 Ill. App. 3d at 884-85.

With these cases in mind, we conclude that the defendant's conduct here did not, as a matter of law, rise to the level of willful and wanton conduct.  It was undisputed that the defendant had no knowledge of a prior injury or even a prior complaint about the tree at issue.  We acknowledge that there was evidence that the defendant's employee mowed the grass around the tree and the grass could have been a natural deterrent or barrier.  However, we fail to see how this, without more, could reasonably be viewed as a course of conduct demonstrating "an utter indifference to or conscious disregard for the safety of others."  745 ILCS 10/1--210 (West 1996).

The plaintiff cites to 
Benhart v. Rockford Park District
, 218 Ill. App. 3d 554 (1991), and 
Muellman v. Chicago Park District
, 233 Ill. App. 3d 1066 (1992), to support his argument that the defendant's course of action constituted willful and wanton conduct.  However, these cases are distinguishable from the case at bar, and, in fact, these distinctions actually help to illustrate why the defendant's conduct in this case did not rise to the level of willful and wanton conduct.

In 
Benhart
, this court held that the patron of a water park sufficiently stated a cause of action for willful and wanton conduct by alleging that the owner of the water park removed nonslip strips from a wave pool.  
Benhart
, 218 Ill. App. 3d at 559-

60.  Further, in 
Muellman
, the Appellate Court, First District, held that the evidence sustained a finding of willful and wanton conduct by the Chicago Park District when the plaintiff suffered injuries after stepping on an uncovered pipe located in Grant Park.  
Muellman
, 233 Ill. App. 3d at 1069.  The defendant's employees painted some of the pipe covers because they knew that the pipes could damage their mowing equipment and knew that the pipe covers were sometimes stolen.  

The plaintiff ignores the fact that the defendants in these cases knew that the conditions at issue were dangerous.  In 
Benhart
, the defendant allegedly knew that its wave pool was slippery without the strips.  
Benhart
, 218 Ill. App. 3d at 559-60.  Similarly, in 
Muellman
 the defendant knew that the uncovered pipes could damage their mowing equipment.  
Muellman
, 233 Ill. App. 3d at 1069.  Conversely, in this case there was no evidence that the defendant knew that the tree at issue was unreasonably dangerous (we note that any tree can pose a danger to those unaware of it while playing tag).  In fact, even though the area around the tree had been mowed for at least six or seven years prior to the incident and the tree was located in a picnic area, there was no evidence that anyone else had been injured by the tree or had even complained about the tree.  

Further, unlike the case at bar, the conditions at issue in 
Benhart
 and 
Muellman
 were concealed from the plaintiffs.  The bottom of the pool in 
Benhart
 was, doubtless, under water, and the uncovered pipes in 
Muellman
 were hidden by grass (
Muellman
, 233 Ill. App. at 1067).  In contrast, the tree at issue in this case was in plain view.  Thus, the cases cited by the plaintiff are not controlling here.

The defendant also argues on appeal that the plaintiff was erroneously permitted to recover for past medical expenses.  Because we have decided that the plaintiff failed to present sufficient evidence to prove that the defendant's conduct was willful and wanton, we need not address this other issue.

The judgment of the circuit court of Kane County is reversed. 

Reversed.

GEIGER and COLWELL, JJ., concur.