707 N.E.2d 140 (1998)
302 Ill. App.3d 573
236 Ill.Dec. 295
Catherine WALLACE, Plaintiff-Appellant,
v.
METROPOLITAN PIER AND EXPOSITION AUTHORITY, a municipal corporation, Defendant-Appellee.
No. 1-98-1956.
Appellate Court of Illinois, First District, Third Division.
December 23, 1998.
*141 Joseph R. Curcio, Ltd., Chicago (Joseph R. Curcio; Lisa R. Curcio, of counsel), for Appellant.
Kilgallon & Carlson, Chicago (Michael B. Kilgallon, of counsel), for Appellee.
Justice CERDA delivered the opinion of the court:
The issue in this case is whether Navy Pier in Chicago is recreational property within the meaning of section 3-106 of the Local Government and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 1996)) so as to immunize its owner, the Metropolitan Pier and Exposition Authority (MPEA), a municipal corporation, from liability for plaintiff's personal injury claim.
The MPEA is a municipal corporation responsible for, inter alia, the "recreational, cultural, commercial, or residential" development and operation of Navy Pier in Chicago. 70 ILCS 210/4(b) (West 1996). Navy Pier consists of more than 50 acres of parks, promenades, gardens, shops, restaurants, and entertainment attractions. The pier specifically offers an open park area containing a 15-story ferris wheel and musical carousel in the summer, and an open-air skating rink in the winter; a children's museum; a 1500-seat *142 outdoor pavilion presenting dance, theatrical, and musical performances; a family pavilion housing a food court and numerous retail shops; an IMAX movie theater; various restaurants and bars; a beer garden; sightseeing and entertainment cruises on Lake Michigan; and seasonal dock-side entertainment, such as bands, singers, mimes, and jugglers. Moreover, the public has generally been allowed to use the pier property for bicycling and roller blading in the morning hours before the pier opens for operation.
Plaintiff was injured on September 2, 1995, as she was walking on the outer dock of Navy Pier. According to plaintiff, the heel of her shoe became lodged in a gap where two pieces of concrete join in the walkway, causing her to fall and sustain injuries to her shoulder. In August 1996, plaintiff brought suit against the MPEA to recover for her injuries, alleging the MPEA was negligent in failing to maintain the walkway in a reasonably safe condition. Notably, the complaint does not allege any wilful and wanton conduct on behalf of the MPEA.
The MPEA moved for summary judgment under section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 1996)), asserting it was immune from liability for its alleged negligence under section 3-106 of the Tort Immunity Act. Section 3-106 provides, in part:
"[A] local public entity * * * is [not] liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity * * * is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 1996). The MPEA contended, because Navy Pier is "public property intended or permitted to be used for recreational purposes" within the meaning of section 3-106, plaintiff's claim for ordinary negligence could not stand. The trial court agreed and granted the MPEA's motion for summary judgment. This appeal followed. For the following reasons, we affirm.
Plaintiff's sole contention on appeal is that the Tort Immunity Act is ineffective to bar her negligence claim against the MPEA. According to plaintiff, Navy Pier is commercial, not recreational property, and therefore falls outside the scope of section 3-106. Plaintiff further maintains any recreational use intended or permitted on the pier is so incidental that section 3-106 immunity is inapplicable.
Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with any affidavits, present no genuine issue of material fact and show the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 1996); Bubb v. Springfield School District 186, 167 Ill.2d 372, 383, 212 Ill.Dec. 542, 657 N.E.2d 887, 893 (1995). The purpose of summary judgment is not to try a question of fact, but, rather, to determine if one exists. Golla v. General Motors Corp., 167 Ill.2d 353, 358, 212 Ill.Dec. 549, 657 N.E.2d 894, 897 (1995). This court reviews the propriety of summary judgment de novo, and in so doing construes the evidence in the record strictly against the movant and liberally in favor of the opponent. Koltes v. St. Charles Park District, 293 Ill.App.3d 171, 175, 227 Ill.Dec. 293, 687 N.E.2d 543, 546 (1997).
Section 3-102 of the Tort Immunity Act imposes a general duty on local public entities to exercise reasonable and ordinary care in maintaining public property. 745 ILCS 10/3-102(a) (West 1996); Bubb, 167 Ill.2d at 377, 212 Ill.Dec. 542, 657 N.E.2d at 891. The question of whether any portion of Navy Pier is property "intended or permitted to be used for recreational purposes" so as to trigger immunity under section 3-106 of the Tort Immunity Act is an issue of first impression for this court. If, as plaintiff asserts, Navy Pier is not recreational property within the meaning of section 3-106, section 3-102 would apply, requiring plaintiff to prove solely ordinary negligence on the part of the MPEA. On the other hand, if Navy Pier is determined to fall within the purview of 3-106, the MPEA is immune from liability since plaintiff's complaint alleges only simple negligence and contains no allegations of wilful *143 and wanton conduct. See 745 ILCS 10/3-106 (West 1996).
The legislature created no new duties, but only immunities and defenses, with the enactment of the Tort Immunity Act. Bubb, 167 Ill.2d at 378, 212 Ill.Dec. 542, 657 N.E.2d at 891. Section 3-106 provides public entities with an affirmative defense against simple negligence claims arising from conditions present on any public property intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property. Bubb, 167 Ill.2d at 378, 212 Ill.Dec. 542, 657 N.E.2d at 891; Dinelli v. County of Lake, 294 Ill.App.3d 876, 881, 229 Ill.Dec. 284, 691 N.E.2d 394, 397 (1998). By shielding public entities from liability, section 3-106 seeks to encourage and promote the development and maintenance of parks, playgrounds, and other recreational areas. Ozuk v. River Grove Board of Education, 281 Ill.App.3d 239, 243, 217 Ill.Dec. 18, 666 N.E.2d 687, 690 (1996).
The applicability of section 3-106 does not depend on the type of activity engaged in at the time of injury. Rather, as the plain language of the statute indicates, application of section 3-106 immunity should be based on a case-by-case evaluation of the subject property's character, i.e., whether the property is intended or permitted to be used for recreational purposes. Bubb, 167 Ill.2d at 379, 384, 212 Ill.Dec. 542, 657 N.E.2d at 891, 893-94; Ozuk, 281 Ill.App.3d at 243, 217 Ill.Dec. 18, 666 N.E.2d at 690. In making this determination, courts consider whether the property has been used for recreation in the past or whether recreation has been encouraged on the property. Bubb, 167 Ill.2d at 382, 657 N.E.2d at 893.
The law is clear, however, that immunity under section 3-106 is not unlimited. Section 3-106 immunity does not apply to any public area where recreation might occur. Bubb, 167 Ill.2d at 381, 212 Ill.Dec. 542, 657 N.E.2d at 892. As recognized by our supreme court, "[p]roviding immunity to any public property where recreation might occur would eviscerate the duty codified in section 3-102." Bubb, 167 Ill.2d at 382, 212 Ill.Dec. 542, 657 N.E.2d at 893. Accordingly, section 3-106 will not apply where the use of the public property is merely incidental to the property's overall and regular use. Bubb, 167 Ill.2d at 382, 212 Ill.Dec. 542, 657 N.E.2d at 893; Batson v. Pinckneyville Elementary School District # 50, 294 Ill.App.3d 832, 838-39, 229 Ill.Dec. 30, 690 N.E.2d 1077, 1081-82 (1998); Ozuk, 281 Ill.App.3d at 244, 217 Ill.Dec. 18, 666 N.E.2d at 690-91.
Upon review of the record, we find Navy Pier is recreational property as contemplated by section 3-106 of the Tort Immunity Act. Significantly, the phrase "recreational purposes" is not limited to sportive or active activity, but includes passive activity as well. Corral v. Chicago Park District, 277 Ill.App.3d 357, 360-61, 213 Ill.Dec. 832, 660 N.E.2d 89, 91-92 (1995); Spencer v. City of Chicago, 192 Ill.App.3d 150, 155, 139 Ill. Dec. 216, 548 N.E.2d 601, 604 (1989). Indeed, as this court has stated, the term "recreation" is defined as "`refreshment of the strength and spirits after toil: DIVERSION, PLAY.' Webster's Third New International Dictionary 1899 (1986). Play `suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any aim other than amusement, diversion, or enjoyment.'" Ozuk, 281 Ill.App.3d at 243-44, 217 Ill.Dec. 18, 666 N.E.2d at 690, quoting Webster's Third New International Dictionary 1737 (1986). Therefore, property intended or permitted for activities involving relaxation and pleasure also falls within the scope of protection afforded by section 3-106. See Puiszis, Illinois Municipal Tort Liability § 4-10, at 182 (1996).
In Bubb, the Illinois Supreme Court commented with approval the case of Diamond v. Springfield Metropolitan Exposition Auditorium Authority, 44 F.3d 599 (1995). The Springfield Metropolitan Exposition Auditorium Authority (Auditorium Authority) owns and operates the Prairie Capital Convention Center in Springfield, Illinois. It is a multi-purpose facility used for meetings, shows, expositions, rodeos, boxing matches, wrestling events, basketball games and tournaments, karate tournaments and other public events. The Auditorium Authority was created pursuant to Sections 205/3 and 4 of the Metropolitan Civic Center Act, 70 ILCS *144 205/3 and 4, which authorized counties to form authorities to promote, operate and maintain expositions, conventions, theatrical, sports and cultural activities.
Diamond was injured while she was on her way to attend a career-related conference for sexual abuse counselors at the Convention Center. Diamond tripped in the doorway to an underground tunnel leading to the Convention Center. The court in Diamond held that the Convention Center was public property intended or permitted to be used for recreational purposes under Section 3-106 of the Tort Immunity Act. Diamond, 44 F.3d at 604.
We find that the case of Diamond is helpful because in that case it was the Auditorium Authority that owned and operated a convention center and in the case sub judice, the MPEA owns and operates Navy Pier. Both the Convention Center and Navy Pier are multi-purpose facilities.
In consideration of the above, Navy Pier is certainly property intended or permitted for recreational use. The record reflects that recreational activity has both occurred and been encouraged on the pier property. The pier offers a myriad of activities and attractions, such as carnival rides, movies, theatrical and musical performances and cruises that are designed for the public's enjoyment. Moreover, the public has enjoyed use of the pier property for bicycling and roller blading. We find the recreational nature of Navy Pier is sufficient to trigger immunity under the statute and is not, as contended by plaintiff, so minor or casual in relation to the pier's overall and regular use to render section 3-106 inapplicable.
Plaintiff stresses, because Navy Pier is occupied by numerous businesses that rent property from the MPEA for their operations, the MPEA intended that Navy Pier be used commercially. However, the fact the pier has both a recreational and nonrecreational purpose does not defeat applicability of section 3-106. See Baggio v. Chicago Park District, 289 Ill.App.3d 768, 772, 224 Ill.Dec. 868, 682 N.E.2d 429, 432 (1997). Hence, the mixed-use nature of Navy Pier does not preclude immunity under the statute. Because the complaint fails to allege any wilful and wanton conduct on behalf of the MPEA, we find, as did the trial court, that the MPEA is entitled to judgment as a matter of law.
For the foregoing reasons, we affirm summary judgment in favor of the MPEA.
Affirmed.
CAHILL, P.J., and BURKE, J., concur.