DIANE ADAMCZYK, Plaintiff-Appellant, v. TOWNSHIP HIGH SCHOOL DISTRICT 214, Defendant and Third-Party Plaintiff-Appellee (Buffalo Grove Park District, Third-Party Defendant-Appellee; Buffalo Grove High School, Defendant).

First District (5th Division)   No. 1—99—4075

Opinion filed July 27, 2001.—Rehearing denied September 6, 2001.

Fred Rabinowitz, of Schaffner, Rabinowitz & Feinartz, P.C., of Chicago, for appellant.

Eugene S. Kraus and Mary Lisa Kamins, both of Connelly Roberts & McGivney, L.L.C., of Chicago, for appellee Township High School District 214.

Edward F. Dutton, of Park District Management Agency, of Wheaton, for appellee Buffalo Grove Park District.

JUSTICE THEIS delivered the opinion of the court:

Diane Adamczyk brought a negligence action against Township High School District 214 (the School District) and Buffalo Grove High School[1] after she was injured in the parking lot of the school. The circuit court granted the School District's motion for summary judgment, ruling that Adamczyk's claim was barred by section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3—106 (West 1996)). We reverse and remand.

On Sunday, March 24, 1996, Adamczyk was injured when she fell in a hole in the parking lot of Buffalo Grove High School. The parking lot was located near the front entrance of the school and provided access to the gymnasium, front entrance and visitor parking. At the time of her fall, Adamczyk's son had just finished playing basketball in the gymnasium as part of a Buffalo Grove Park District (the Park District) sponsored league.

Adamczyk filed a single-count negligence complaint against both the school and the School District. The School District filed a motion to dismiss based on section 3—106 of the Tort Immunity Act, which was denied. The School District next filed a motion for summary judgment based in part on section 3—106 of the Tort Immunity Act, which was also denied. The School District then filed a third-party action against the Park District for contribution, breach of contract and contractual indemnity, contending that the Park District leased the facilities at Buffalo Grove High School from the School District at the time of Adamczyk's injury and was therefore liable.

The Park District filed a combined motion to dismiss the third-party complaint pursuant to sections 2—619 and 2—615 of the Illinois Code of Civil Procedure, partly based on section 3—106 of the Tort Immunity Act. 735 ILCS 5/2—619, 2—615 (West 1996). In its response to the combined motion to dismiss, the School District agreed with a portion of the motion and argued that section 3—106 immunity applied to immunize both the School District and the Park District. The

---

[1]The record shows that no summons was ever served on Buffalo Grove High School and no appearance was filed on its behalf. Therefore, on appeal, we do not consider Buffalo Grove High School as a defendant.

trial court then chose to consider this motion as both the Park District's motion to dismiss the third-party complaint and as the School District's motion to reconsider its motion for summary judgment on the original complaint, narrowing the issue to section 3—106 immunity. The court granted the School District's motion to reconsider, granted summary judgment in favor of the School District, granted the Park District's motion to dismiss and dismissed the third-party complaint with prejudice. Adamczyk then filed this timely appeal.

●1 Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file present no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Jones v. Chicago HMO Ltd.*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). We review a grant of summary judgment *de novo*, construing the evidence in the record strictly against the movant and liberally in favor of the opponent. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424, 706 N.E.2d 460, 463 (1998); *Wallace v. Metropolitan Pier & Exposition Authority*, 302 Ill. App. 3d 573, 576, 707 N.E.2d 140, 142 (1998).

The sole issue on appeal is whether section 3—106 of the Tort Immunity Act applies to the parking lot of a public high school, thereby immunizing the school district and park district from liability for ordinary negligence and barring plaintiff's claim.

●2 Section 3—102 of the Tort Immunity Act imposes a general duty on local public entities to exercise ordinary care in maintaining public property in a reasonably safe condition. 745 ILCS 10/3—102(a) (West 1996); *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377, 657 N.E.2d 887, 891 (1995). Section 3—106, however, provides public entities with an affirmative defense which bars a plaintiff's right to recovery for ordinary negligence. That section states:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3—106 (West 1996).

It is undisputed that the School District and the Park District are local public entities and Buffalo Grove High School is public property. Further, Adamczyk's complaint alleged only negligence and not willful and wanton conduct.

Section 3—106 was enacted to encourage the development and maintenance of public parks, playgrounds and similar recreational ar-

eas. *Kayser v. Village of Warren*, 303 Ill. App. 3d 198, 200, 707 N.E.2d 285, 287 (1999). "By providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims." *Bubb*, 167 Ill. 2d at 378, 657 N.E.2d at 891. The statute, however, does not mention public schools.

Courts have applied two separate analyses in determining whether property is immune under section 3—106: (1) whether the property itself is intended or permitted to be used for recreational purposes; and (2) whether the property in question, though not itself recreational, increases the usefulness of the adjacent recreational property. The School District and the Park District concede that the issue here is not whether the parking lot is intended or permitted to be used for recreational purposes, but whether the parking lot increases the usefulness of the gymnasium.

The question of whether the parking lot of a public school is immune under section 3—106 is one of first impression for this court. Adamczyk contends that Buffalo Grove High School's regular purpose was educational and, while the gymnasium was recreational property, the parking lot was merely incidental to the use of the gymnasium and, therefore, section 3—106 immunity does not apply. The School District and the Park District together argue that the school gymnasium constituted recreational property on the date and time of Adamczyk's injury, the parking lot near the gymnasium increased the gymnasium's usefulness and is thus immune under *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 689 N.E.2d 1119 (1997).

In *Sylvester*, plaintiff fell over a concrete parking abutment on a walkway adjacent to a Soldier Field parking lot on her way to a Chicago Bears football game. 179 Ill. 2d at 502, 689 N.E.2d at 1121. The Illinois Supreme Court found that Soldier Field itself was recreational property and held that section 3—106 may apply to facilities or structures, themselves not recreational in nature, "that increase the usefulness of public property intended or permitted to be used for recreational purposes." *Sylvester*, 179 Ill. 2d at 508, 689 N.E.2d at 1124. The court examined the "Soldier Field recreational facility" as a whole and included the parking lots within that facility. *Sylvester*, 179 Ill. 2d at 509, 689 N.E.2d at 1124. The supreme court held that the parking lots and walkways adjacent to Soldier Field increased its usefulness and were therefore permitted or intended to be used for recreational purposes under section 3—106. *Sylvester*, 179 Ill. 2d at 508, 689 N.E.2d at 1124.

•3 The School District and the Park District apply *Sylvester* to this case and argue that, because Adamczyk's injury occurred on Sunday, where the only activity at the school was a Park District-

sponsored basketball game in the gymnasium, the gymnasium was exclusively recreational and, thus, the adjacent parking lot used to access the gymnasium was immune under the increased usefulness test in *Sylvester*. However, Illinois courts have made clear that the character and nature of the property as a whole determines the application of section 3—106 immunity, not the plaintiff's use of the property or her activity at the time of her injury. *Sylvester*, 179 Ill. 2d at 509, 689 N.E.2d at 1124; *Bubb*, 167 Ill. 2d at 379, 657 N.E.2d at 891; *Kayser*, 303 Ill. App. 3d at 200-01, 707 N.E.2d at 287; *Hanover Insurance Co. v. Board of Education of the City of Chicago*, 240 Ill. App. 3d 173, 176, 608 N.E.2d 183, 185 (1992). Therefore, the application of section 3—106 immunity must be based on a case-by-case evaluation of the nature of the property. *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 893-94; *Batson v. Pinckneyville Elementary School District No. 50*, 294 Ill. App. 3d 832, 835, 690 N.E.2d 1077, 1079 (1998). We therefore reject defendants' argument.

Here, the record shows that the parking lot in question provided access to the gymnasium and front entrance of the school and was used for visitor parking. Adamczyk testified in her deposition that the parking lot was adjacent to the gymnasium, approximately 30 feet from its entrance. There was also a back parking lot that Adamczyk testified was not closest to the gymnasium, which accessed other parts of the school. John Mullens, an investigator hired by Adamczyk, stated in his affidavit that he observed and photographed Buffalo Grove High School and the adjacent parking lots. Mullens stated that this parking lot was directly adjacent to the front entrance of the school and was the closest parking lot to that entrance. His photographs reveal that this parking lot facilitated access to several parts of the high school in addition to the gymnasium.

Based on this evidence, we find that this parking lot served the school as a whole, providing access to the front entrance of the building as well as the gymnasium and other areas. The parking lot was integral to the entire school, not just the gymnasium as the School District and the Park District suggest. Thus, we must look at Buffalo Grove High School as a whole, not merely the gymnasium, when determining the nature of the property.

Public property may have more than one intended use. *Bubb*, 167 Ill. 2d at 383, 657 N.E.2d at 893. As a school, Buffalo Grove High School is an educational institution with one of its purposes to educate its students. Also, the school permits or intends portions of its property to be used for recreational purposes, namely, the gymnasium. Therefore, Buffalo Grove High School is a multipurpose facility permitting both recreational and nonrecreational activities.

Several previous cases have held that the fact that facilities have both recreational and nonrecreational purposes does not defeat the applicability of section 3—106. These facilities include a public community building (*Kayser*, 303 Ill. App. 3d at 203, 707 N.E.2d at 289); a public harbor (*Baggio v. Chicago Park District*, 289 Ill. App. 3d 768, 772, 682 N.E.2d 429, 432 (1997)); a public convention center (*Diamond v. Springfield Metropolitan Exposition Auditorium Authority*, 44 F.3d 599, 602-04 (7th Cir. 1995)); and Navy Pier, a property with parks, gardens, shops, restaurants and entertainment attractions as well as commercial activities (*Wallace*, 302 Ill. App. 3d at 578, 707 N.E.2d at 144). In those cases, courts have found that, because one purpose of the facility was recreational, section 3—106 applied and defendants were immune from liability. These cases, however, are distinguishable.

In *Wallace*, the court held that section 3—106 does not apply where the use of the public property was merely incidental to the property's overall and regular use. 302 Ill. App. 3d at 577, 707 N.E.2d at 143. Moreover, *Bubb* agreed that providing immunity to any public property where recreation might occur would eliminate the duty imposed on public entities under section 3—102 of the Tort Immunity Act. 167 Ill. 2d at 382, 657 N.E.2d at 893. At some point, the supreme court stated, "the use of public property for recreation may be so incidental that section 3—106 does not apply." *Bubb*, 167 Ill. 2d at 382, 657 N.E.2d at 893.

In *Kayser*, *Wallace*, *Diamond* and *Baggio*, the overall and regular use of the property was recreational. Navy Pier, a community building, a convention center and a public harbor all involve recreation as their regular use. The courts correctly held that those properties constituted public property intended or permitted to be used for recreational purposes under section 3—106. Here, Buffalo Grove High School's overall and regular use was to educate its students. Any use of the high school as a recreational facility was merely incidental to its regular educational function. Further, none of these cases addressed public school property. Therefore, a public school cannot be compared to those multipurpose properties whose regular and overall purpose is recreation.

Similarly, *Sylvester* is distinguishable because it did not concern a multipurpose facility like Buffalo Grove High School. Instead, Soldier Field's overall and regular purpose was purely recreational. Soldier Field's adjacent parking lots and walkways served only to benefit Soldier Field and thus increased the usefulness of the stadium. The parking lot at Buffalo Grove High School, however, provided access to several different areas of the school, some without a recreational purpose, such as the school's front entrance. This parking lot, then, is dissimi-

lar to the parking lot in *Sylvester* and does not warrant the same result.

While several cases have dealt with public schools, none have addressed school parking lots. These cases have found immune only gymnasiums (*Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 244, 666 N.E.2d 687, 691 (1996)); playgrounds (*Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419, 422-23, 629 N.E.2d 1227, 1229 (1994); *Hanover Insurance Co.*, 240 Ill. App. 3d at 174, 608 N.E.2d at 184); and sidewalks intended to be used for recreational purposes within school grounds (*Bubb*, 167 Ill. 2d at 382-83, 657 N.E.2d at 893; *Ramos v. Waukegan Community Unit School District No. 60*, 188 Ill. App. 3d 1031, 1036-37, 544 N.E.2d 1302, 1305 (1989)). These courts did not have to decide whether a school parking lot was recreational or whether the entire school constituted recreational property.

While not addressing this exact issue, the Illinois Supreme Court foreshadowed its answer to this situation in *Bubb*. The court acknowledged that one reading of *Ramos* suggested that a school district would be absolutely immune from liability for injuries arising on all nonplayground school property, absent proof of willful and wanton conduct. *Bubb*, 167 Ill. 2d at 383-84, 657 N.E.2d at 893. The *Bubb* court then rejected this statement, stating that it did "not hold that section 3—106 immunity should be applied to all school property *per se*." *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 893. The supreme court suggested that, while certain areas of public schools constitute public property intended or permitted to be used for recreational purposes and are thus immune, the entire facility itself cannot be immune *per se*. *Bubb* also agreed with the appellate court, which worried that, if the term "permitted" was given an expansive interpretation, " 'immunity would swallow up any liability of a local public entity for its sidewalks or other public property.' " *Bubb*, 167 Ill. 2d at 381, 657 N.E.2d at 892, quoting *Bubb v. Springfield School District 186*, 263 Ill. App. 3d 942, 945, 636 N.E.2d 4, 6 (1994), *rev'd*, *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 657 N.E.2d 887 (1995). Therefore, *Bubb* limited its analysis to the nature of the particular public property at issue.

In following this supreme court analysis, we decline to immunize all public school property and instead reiterate the supreme court and numerous appellate court decisions which hold that the application of section 3—106 should be based on a case-by-case examination of the nature of the property. Therefore, we hold that section 3—106 immunity does not apply to the Buffalo Grove High School parking lot in this case because the lot is substantially connected to the entire school and only incidentally to the recreational property, the gymnasium.

For the foregoing reasons, we reverse the granting of the School District's motion for summary judgment and the Park District's motion to dismiss and remand this case for further proceedings. We also reinstate the School District's third-party complaint against the Park District.

Reversed and remanded.

QUINN, P.J., and REID, J., concur.