MATTHEW REXROAD *et al.*, Plaintiffs-Appellants, v. THE CITY OF SPRINGFIELD *et al.*, Defendants-Appellees.

Fourth District   No. 4—01—0674

Argued December 12, 2001.—Opinion filed June 17, 2002.

546

KNECHT, J., dissenting.

Mark M. Wilson (argued) and M. Michael Waters, both of Vonachen, Lawless, Trager & Slevin, of Peoria, for appellants.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, of Peoria, and Theresa M. Powell and Scott D. Spooner, both of Heyl, Royster, Voelker & Allen, of Springfield, for appellee Board of Education of Springfield School District No. 186.

Robert M. Rogers, Corporation Counsel, of Springfield (James A. Lang, Assistant Corporation Counsel, of counsel), for appellee City of Springfield.

JUSTICE TURNER delivered the opinion of the court:

In August 1995, plaintiff, Matthew Rexroad, suffered injuries when he fell in an excavation area in the Lanphier High School (High School) parking lot. Matthew and his father, Harold Rexroad, brought a negligence action against defendants, the City of Springfield (City); City Water, Light, and Power (CWLP); and the Board of Education of Springfield School District No. 186 (Board), to recover damages for Matthew's injuries. The trial court struck CWLP from the complaint. The City and the Board sought summary judgment, asserting they were not liable for Matthew's injuries because (1) the parking lot was recreational property under section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/ 3—106 (West 1994)) and (2) the excavation area was open and obvious. The trial court granted defendants' summary judgment motion.

Plaintiffs appeal, contending (1) the excavated area in the High School parking lot was not recreational property and (2) the hole was not open and obvious. We affirm.

## I. BACKGROUND

On August 15, 1995, Matthew broke his left ankle when he was walking across an excavation area with a sand-filled hole in the High School parking lot and fell. During his deposition, Matthew drew a map of the High School complex that indicated where the hole was in relationship to the football field and the school building. See appendix. During football practices, the gate labeled "b" on the map was locked. A fence surrounded the practice field, and the hole was outside of that fence.

The hole in question was created by CWLP's removal of a fire hydrant. A CWLP employee testified in a deposition that barricades and an orange ribbon were placed around the hole following the excavation of the fire hydrant. The barricades were to remain in place until another City department filled in the hole and paved the area up to the level of the parking lot. Before the hydrant's removal, students had damaged the hydrant with their vehicles.

At the time of Matthew's fall, he was working as a helper for the High School's football team during its preseason summer practice sessions. In his deposition, Matthew stated a coach had told him to go to the locker room to get a football helmet for a player. The locker room was in the gymnasium by the football field, and after retrieving the helmet, Matthew exited the doors by the gymnasium. He then headed back to the practice field and was focusing his attention on the player

on the field who needed the helmet when he stepped into the hole and fell. Matthew did not remember any details of his fall but speculated he might have slipped on some residual sand on the pavement surrounding the hole. Matthew described the hole as being eight feet by eight feet and filled with sand with a four-inch gap between the sand and the surrounding blacktop. After his fall and while lying in the sand, Matthew noticed barricades lined up against a fence behind the hole.

Shirley Laurik testified in her deposition that she attended all of the High School football practices when her son, Russell Laurik, was a manager for the team. Matthew testified Shirley always watched the team practice. When Matthew fell, Shirley was sitting in a chair near the hole but did not see him fall. In his deposition, Russell testified he did not have to be on the practice field during football practices and was relaxing on the parking lot when he saw Matthew fall. He further testified he walked through the hole with no difficulties and so had the football players.

In March 1998, Matthew and his father filed a complaint sounding in negligence. The complaint alleged the City had excavated the parking lot. The complaint also named the Board as a defendant and alleged the Board had knowledge of the excavation. The complaint alleged both defendants left the area in a dangerous condition and failed to barricade or cordon off the unrepaired excavation. The complaint listed CWLP as a defendant. However, in September 2000, the trial court granted CWLP's motion to strike it from the complaint because CWLP was an agency of the City that could not be sued in its own name.

The remaining defendants filed a motion for summary judgment, arguing the school parking lot should be considered recreational property under section 3—106 of the Act (745 ILCS 10/3—106 (West 1994)), thereby immunizing them from ordinary negligence and barring plaintiffs' claim. The motion further alleged the excavation area was open and obvious; thus, defendants owed no duty to plaintiff. The trial court granted defendants' motion, finding the parking lot was recreational property under section 3—106 of the Act. The trial court did not rule on whether the hole was open and obvious. This appeal followed.

## II. ANALYSIS

■ Plaintiffs assert the trial court erred in granting defendants' motion for summary judgment. Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is

entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Boldini v. Owens Corning*, 318 Ill. App. 3d 1167, 1169-70, 744 N.E.2d 370, 372 (2001). We review grants of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmovant. *Boldini*, 318 Ill. App. 3d at 1170, 744 N.E.2d at 372.

The first issue on appeal is whether section 3—106 of the Act applies to the parking lot containing the excavation area, thereby immunizing defendants and barring plaintiffs' claim.

■ Section 3—102(a) of the Act (745 ILCS 10/3—102(a) (West 1994)) imposes a duty on local public entities to exercise ordinary care to maintain public property in a reasonably safe condition. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377, 657 N.E.2d 887, 891 (1995). However, section 3—106 of the Act provides such entities with an affirmative defense that, if properly raised and proved by the entity, bars a plaintiff's right to recovery for ordinary negligence. *Bubb*, 167 Ill. 2d at 378, 657 N.E.2d at 891. Section 3—106 states as follows:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings[,] or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3—106 (West 1994).

The parties do not dispute that defendants are local public entities and the excavation area is public property. Additionally, plaintiffs have alleged only negligence, not willful and wanton conduct.

■ The Supreme Court of Illinois has held section 3—106 applies when the public property is intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property. *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 894. In addition, section 3—106 may apply to nonrecreational facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes. *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 508, 689 N.E.2d 1119, 1124 (1997). The character of the property as a whole determines whether the immunity applies. *Sylvester*, 179 Ill. 2d at 509, 689 N.E.2d at 1124.

In *Sylvester*, 179 Ill. 2d at 502, 689 N.E.2d at 1121, our supreme court addressed whether section 3—106 immunized the Chicago Park District from liability for a plaintiff's injuries sustained when she fell on a walkway of a parking lot serving Soldier Field. The plaintiff was walking to Soldier Field to attend a football game when the fall oc-

curred. *Sylvester*, 179 Ill. 2d at 502, 689 N.E.2d at 1121. The supreme court noted although the walkways and parking lots adjacent to Soldier Field may not have been primarily recreational, Soldier Field itself was recreational and such facilities increased its usefulness. *Sylvester*, 179 Ill. 2d at 508, 689 N.E.2d at 1124. The court explained the character of the property as a whole determines whether the section 3—106 immunity applies, and there, the parking lot in which the plaintiff fell was an integral part of the Soldier Field recreational facility. *Sylvester*, 179 Ill. 2d at 509, 689 N.E.2d at 1124.

As noted by the supreme court (*Sylvester*, 179 Ill. 2d at 510-11, 689 N.E.2d at 1125), numerous appellate court cases have reached similar conclusions. See, *e.g.*, *Annen v. Village of McNabb*, 192 Ill. App. 3d 711, 713, 548 N.E.2d 1383, 1384 (1990) (plaintiff injured in a rest room located in a park); *Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419, 423-24, 629 N.E.2d 1227, 1230 (1994) (plaintiff injured by falling against a pumphouse located on a school playground); *Conoway v. Hanover Park Park District*, 277 Ill. App. 3d 896, 900, 661 N.E.2d 528, 531 (1996) (plaintiff injured by falling into a drainage ditch in a park); *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013, 1022-23, 576 N.E.2d 168, 175-76 (1991) (plaintiff injured by a cable barricade restricting entry to forest preserve access road); see also *Dinelli v. County of Lake*, 294 Ill. App. 3d 876, 882, 691 N.E.2d 394, 398 (1998) (plaintiff injured in crosswalk connecting bicycle paths).

In support of their argument, plaintiffs rely on two Fifth District cases (*Capps v. Belleville School District No. 201*, 313 Ill. App. 3d 710, 730 N.E.2d 81 (2000); *Batson v. Pinckneyville Elementary School District No. 50*, 294 Ill. App. 3d 832, 690 N.E.2d 1077 (1998)) and the First District's decision in *Adamczyk v. Township High School District 214*, 324 Ill. App. 3d 920, 755 N.E.2d 30 (2001), all of which attempted to distinguish *Sylvester*. We find *Adamcyzk* addressed the most similar factual situation to the present case, and thus we will focus on that case.

In *Adamczyk*, 324 Ill. App. 3d at 921, 755 N.E.2d at 31, the plaintiff was injured when she fell in a school parking lot as she was leaving her son's park-district-sponsored basketball game that was held in the school gymnasium. The parking lot provided access to the gymnasium and the school's front entrance and was used as visitor parking. *Adamczyk*, 324 Ill. App. 3d at 924, 755 N.E.2d at 34. Because the parking lot served the school as a whole, the First District determined it must look to the school as a whole, not merely the gymnasium, in determining the nature of the property. The court then determined the school was a multipurpose facility permitting both recreational and nonrecreational activities. *Adamczyk*, 324 Ill. App. 3d at 924, 755 N.E.2d at 34.

The *Adamcyzk* court distinguished *Sylvester*, finding *Sylvester* did not concern a multipurpose facility because "Soldier Field's overall and regular purpose was purely recreational." *Adamczyk*, 324 Ill. App. 3d at 925, 755 N.E.2d at 35. The court noted "Soldier Field's adjacent parking lots and walkways served only to benefit Soldier Field and thus increased the usefulness of the stadium." *Adamczyk*, 324 Ill. App. 3d at 925, 755 N.E.2d at 35. The First District also distinguished the cases that hold section 3—106 of the Act applies even though the facilities have both recreational and nonrecreational purposes (see *Kayser v. Village of Warren*, 303 Ill. App. 3d 198, 203, 707 N.E.2d 285, 289 (1999) (public community building); *Baggio v. Chicago Park District*, 289 Ill. App. 3d 768, 772, 682 N.E.2d 429, 432 (1997) (a public harbor); *Diamond v. Springfield Metropolitan Exposition Auditorium Authority*, 44 F.3d 599, 602-04 (7th Cir. 1995) (public convention center); *Wallace v. Metropolitan Pier & Exposition Authority*, 302 Ill. App. 3d 573, 578, 707 N.E.2d 140, 144 (1998) (Chicago's Navy Pier)), noting the overall and regular use of the property in those cases was recreational, not educational. *Adamczyk*, 324 Ill. App. 3d at 925, 755 N.E.2d at 34-35.

The *Adamczyk* court further found any use of the school as a recreational facility was merely incidental to its regular educational function. *Adamczyk*, 324 Ill. App. 3d at 925, 755 N.E.2d at 35. Noting the supreme court's statement in *Bubb*, that at some point, " 'the use of public property for recreation may be so incidental that section 3—106 does not apply' " (*Adamczyk*, 324 Ill. App. 3d at 925, 755 N.E.2d at 34, quoting *Bubb*, 167 Ill. 2d at 382, 657 N.E.2d at 893), the First District declined to immunize all public school property and thus held section 3—106 immunity did not apply to the school's parking lot (*Adamczyk*, 324 Ill. App. 3d at 926, 755 N.E.2d at 35-36).

Although we agree that all public school property is not immunized by section 3—106, we disagree with *Adamcyzk*'s analysis as to the school's parking lot. The *Adamcyzk* court takes a broader view of the term "property as a whole" than the supreme court. In *Sylvester*, 179 Ill. 2d at 508-09, 689 N.E.2d at 1124, the supreme court examined the relationship between the recreational facility, Soldier Field, and the adjacent walkways and parking lots that were by themselves nonrecreational. The supreme court did not examine whether the parking lots and walkways adjacent to Soldier Field also served other facilities. In distinguishing *Sylvester*, the First District stated the walkways and parking lots adjacent to Soldier Field *served only* to benefit Soldier Field. *Adamczyk*, 324 Ill. App. 3d at 925, 755 N.E.2d at 35. However, *Sylvester* did not state anything to that effect, and we question whether the record in *Sylvester* would support the First District's conclusion.

■ Additionally, the First District focused on the "overall and regular use" of the school property, finding that it was educational and not recreational. *Adamczyk*, 324 Ill. App. 3d at 925, 755 N.E.2d at 34-35. However, the supreme court has rejected the argument that the primary purpose of the property must be recreational for the immunity to apply. See *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 894. *Adamcyzk*'s "overall and regular use" are merely different words for "primary purpose." Similarly, we do not find it was proper to look to the "overall and regular use" in determining whether the use of the school property for recreation was so incidental that section 3—106 did not apply.

Further, we conclude distinguishing *Sylvester* on the basis that Soldier Field was not a multipurpose facility was inappropriate in light of the case law treating multipurpose facilities the same as pure recreational facilities under section 3—106 of the Act. See *Kayser*, 303 Ill. App. 3d at 203, 707 N.E.2d at 289; *Baggio*, 289 Ill. App. 3d at 772, 682 N.E.2d at 432; *Diamond*, 44 F.3d at 602-04; *Wallace*, 302 Ill. App. 3d at 578, 707 N.E.2d at 144. Accordingly, we follow the supreme court's decision in *Sylvester*.

■ Here, the football practice field and the locker room are both recreational facilities. During football practices, the gate closest to the locker room was locked, and the participants in the football practice had to walk on the parking lot to gain access to the football field from the locker room. Matthew was walking on the parking lot to gain access to the football field when he fell. Further, Russell testified he and the football players had walked through the parking lot on the day in question. Looking at the property as a whole, the parking lot is integral to the football recreational facility because it connects the locker room and the football practice field. Accordingly, the parking lot increases the usefulness of the football practice field that is permitted to be used for recreational purposes, and thus section 3—106 applies.

Additionally, evidence indicates the parking lot *was* used for recreational purposes. The deposition testimony of several witnesses indicated that Shirley, a spectator, sat in the parking lot during all football practices. Spectators of sports are engaged in recreation. See *Diamond*, 44 F.3d at 603. Moreover, Russell, a football manager, was in the parking lot when Matthew fell. Russell testified he did not have to be on the football field during practices. While evidence is present that students parked in the lot to attend school, such nonrecreational activity does not defeat immunization under section 3—106 of the Act. See *Kayser*, 303 Ill. App. 3d at 203, 707 N.E.2d at 289; *Baggio*, 289 Ill. App. 3d at 772, 682 N.E.2d at 432; *Diamond*, 44 F.3d at 602-04; *Wallace*, 302 Ill. App. 3d at 578, 707 N.E.2d at 144.

Accordingly, section 3—106 of the Act immunizes defendants from liability for Matthew's injuries, and summary judgment was appropriate.

In light of our resolution of the application of section 3—106 of the Act, we need not address whether the hole was open and obvious.

## III. CONCLUSION

For the forgoing reasons, we affirm the trial court's grant of summary judgment.

Affirmed.

STEIGMANN, J., concurs.

JUSTICE KNECHT, dissenting:

I respectfully dissent. I believe the thoughtful analysis in *Adamczyk v. Township High School District 214*, 324 Ill. App. 3d 920, 755 N.E.2d 30 (2001), is persuasive and not at odds with *Sylvester* and *Bubb*. *Adamczyk* is factually consistent with this case. Not all public school property is immunized by section 3—106. A school parking lot is not recreational property simply because a student worker who is assisting the football team walks across it or a spectator sits in the lot to watch football practice. I would reverse.