796 N.E.2d 1040 (2003)
207 Ill.2d 33
277 Ill.Dec. 674
Matthew REXROAD, et al., Appellants,
v.
The CITY OF SPRINGFIELD et al., Appellees.
No. 94374.
Supreme Court of Illinois.
August 21, 2003.
*1041 M. Michael Waters, John A. Slevin, of Vonachen, Lawless, Trager & Slevin, Peoria, for appellants.
Robert M. Rogers, Corporation Counsel, and James A. Lang, Assistant Corporation Counsel, Springfield, for appellee City of Springfield, Illinois.
Heyl, Royster, Voelker & Allen (Karen L. Kendall, Peoria, Teresa M. Powell and Scott D. Spooner, Springfield, of counsel), for appellee Board of Education of Springfield School District No. 186 of Sangamon County, Illinois.
William A. Morgan, Chicago, and Edward F. Dutton, Lisle, for amici curiae Illinois Association of School Boards et al.
Justice THOMAS delivered the opinion of the court:
Plaintiffs, Matthew Rexroad and Harold Rexroad, filed a negligence complaint against defendants, the City of Springfield and the Board of Education of Springfield School District No. 186. Plaintiffs sought to recover damages for injuries Matthew suffered when he fell in an area under excavation in a parking lot located adjacent *1042 to a high school football field. The trial court granted summary judgment in favor of the City and the school board, finding that the immunity of section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 1994)) precluded liability. The appellate court affirmed, with one justice dissenting. 331 Ill.App.3d 545, 265 Ill.Dec. 450, 772 N.E.2d 821. We subsequently allowed plaintiffs' petition for leave to appeal (177 Ill.2d R. 315(a)). We have also allowed the Illinois Association of School Boards, the Illinois Governmental Association of Pools, the Park District Risk Management Agency, and the Board of Education of the City of Chicago, to file an amicus curiae brief in support of defendants.

BACKGROUND
On August 12, 1995, Matthew was working as a manager for the Springfield Lanphier High School football team during its preseason summer practice sessions. At some point during practice, a coach told Matthew to leave the practice field to get a helmet from the locker room for one of the players. The locker room was in the gymnasium to the north of the practice field. Matthew exited the practice field using the north gate, "gate B." This was the most direct route to the locker room and did not lead near to the vicinity of the hole. After retrieving the helmet, however, Matthew found that "gate B" had been locked, so he headed through the parking lot toward the west gate, "gate A." He was focusing his attention on the player who needed the helmet, when he stepped into a hole in the parking lot between gates A and B and broke his ankle. Matthew had noticed the hole in the parking lot earlier that day. The parking lot was located north and west of the practice field, between the gym and practice field. The parking lot served the entire school complex, with the freshman-sophomore doors located west of the lot.
The hole Matthew fell in was about 64 square feet in size, 4 inches deep, and was filled with sand. It was created by the removal of a fire hydrant. City workers placed barricades and an orange ribbon around the hole following the excavation, and the barricades were to remain in place until the City filled the hole and paved it to make it level with the parking lot. However, the barricades were not in place at the time of Matthew's fall; instead, they were lined up against a fence behind the hole.
Shirley Laurik testified in her deposition that she went to all of the Springfield Lanphier High School football practices in 1995 because her son, Russell Laurik, was a manager for the team. Matthew testified in his deposition that Shirley always watched the team practice and that when he fell on the day in question, she was seated in a chair near the hole in the parking lot, but did not see him fall.
Plaintiffs filed a negligence suit against the City and the school board. Defendants filed a motion for summary judgment, contending that the site of Matthew's injury was "intended or permitted to be used for recreational purposes" under section 3-106 of the Tort Immunity Act (745 ILCS 10/3-106 (West 1994)) and defendants were therefore immune from an ordinary negligence claim. Defendants' summary judgment motion further alleged that they owed no duty to Matthew because the hole was an open and obvious condition on the premises. The trial court granted summary judgment for defendants, finding that they were immune from suit under section 3-106 of the Act. The trial court did not address the question of whether the hole was open and obvious.
*1043 The appellate court affirmed, relying primarily on this court's decision in Sylvester v. Chicago Park District, 179 Ill.2d 500, 228 Ill.Dec. 698, 689 N.E.2d 1119 (1997) (section 3-106 immunity applied where plaintiff was injured in a public parking lot across the street from Soldier Field). 331 Ill.App.3d at 549-53, 265 Ill.Dec. 450, 772 N.E.2d 821. The appellate court noted that the locker room and the practice field are recreational facilities. It then found that, "[I]ooking at the property as a whole, the parking lot is integral to the football recreational facility because it connects the locker room and football practice field. Accordingly, the parking lot increases the usefulness of the football practice field that is permitted to be used for recreational purposes * * *." 331 Ill.App.3d at 552, 265 Ill.Dec. 450, 772 N.E.2d 821.

ANALYSIS
Summary judgment is proper when the pleadings, affidavits, depositions, admissions, and exhibits on file, viewed in the light most favorable to the nonmovant, demonstrate that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2000); Sollami v. Eaton, 201 Ill.2d 1, 6, 265 Ill.Dec. 177, 772 N.E.2d 215 (2002). The purpose of summary judgment is not to try a question of fact, but is instead to determine whether one exists. Golla v. General Motors Corp., 167 Ill.2d 353, 358, 212 Ill.Dec. 549, 657 N.E.2d 894 (1995). We review de novo an order granting summary judgment. Harrison v. Hardin County Community Unit School District No. 1, 197 Ill.2d 466, 470-71, 259 Ill.Dec. 440, 758 N.E.2d 848 (2001).
The first issue presented on appeal is whether section 3-106 of the Tort Immunity Act is applicable to the school parking lot where plaintiff was injured, thereby immunizing defendants from liability. Section 3-106 of the Act provides as follows:
"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added.) 745 ILCS 10/3-106 (West 1994).
Section 3-106 provides a public entity with an affirmative defense, which, if properly raised and proved, bars a plaintiff's right to recovery. Bubb v. Springfield School District 186, 167 Ill.2d 372, 378, 212 Ill.Dec. 542, 657 N.E.2d 887 (1995). By providing immunity in section 3-106, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims. Bubb, 167 Ill.2d at 378, 212 Ill.Dec. 542, 657 N.E.2d 887. In 1986, the legislature expanded the scope of immunity because local public entities began facing difficulty in affording liability insurance. Sylvester, 179 Ill.2d at 509, 228 Ill.Dec. 698, 689 N.E.2d 1119. Prior to its amendment in 1986, section 3-106 applied only to public property "intended or permitted to be used as a park, playground or open area for recreational purposes." Ill.Rev.Stat.1985, ch. 85, par. 3-106. The General Assembly amended the statute to its current language, applying to "any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities." Pub. Act 84-1431, art. 1, § 2, eff. November 25, 1986 (amending Ill.Rev.Stat.1985, ch. 85, par. 3-106); see *1044 745 ILCS 10/3-106 (West 2000). Section 3-106 immunity was expanded to cover any recreational property, similar in nature to the kinds of properties listed in the statute. Bubb, 167 Ill.2d at 378, 212 Ill.Dec. 542, 657 N.E.2d 887.
This court has had two prior opportunities to examine the language of section 3-106 of the Act. In Bubb v. Springfield School District 186, 167 Ill.2d 372, 384, 212 Ill.Dec. 542, 657 N.E.2d 887 (1995), we found that section 3-106 "applies if public property is intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property." More recently, in Sylvester, we found that section 3-106 might apply to facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes, even though the facilities or structures themselves may not be recreational in character. Sylvester, 179 Ill.2d at 508, 228 Ill.Dec. 698, 689 N.E.2d 1119.
Plaintiffs argue that the character of school property as a whole is educational, not recreational. Therefore, they contend, this case is distinguishable from Sylvester. They claim that because the parking lot was not within the bounded area of the practice field, the independent character of the parking lot must control over any increased usefulness it may have added to the practice field. To support their position, plaintiffs rely upon Adamczyk v. Township High School District 214, 324 Ill.App.3d 920, 257 Ill.Dec. 928, 755 N.E.2d 30 (2001), Capps v. Belleville School District No. 201, 313 Ill.App.3d 710, 246 Ill.Dec. 401, 730 N.E.2d 81 (2000), and Batson v. Pinckneyville Elementary School District No. 50, 294 Ill.App.3d 832, 229 Ill.Dec. 30, 690 N.E.2d 1077 (1998). In response, defendants urge this court to read Sylvester as granting immunity for nonrecreational pathways on school property that provide access to recreational facilities because such paths increase the usefulness of the facilities.
We find plaintiffs' arguments more persuasive, as defendants' interpretation would be too expansive and would swallow the common law duty of due care codified by section 3-102(a) of the Act (745 ILCS 10/3-102(a) (West 1994) (a local public entity has a duty to exercise ordinary care to maintain its property in a reasonably safe condition)).
Sylvester is distinguishable from the present case. There, the plaintiff parked at McCormick Place and walked toward Soldier Field for a Bears football game. As she was traversing the south parking lot of Soldier Field, she tripped on a misplaced, concrete car stop. This court found that section 3-106 immunity applied, stating as follows:
"[S]ection 3-106 may apply to facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes. These facilities or structures need not be recreational in character for section 3-106 to apply. [Citation.] Although the walkways and parking lots adjacent to Soldier Field may not be primarily recreational, Soldier Field itself is certainly recreational and these facilities increase its usefulness. Taken as a whole, we find that Soldier Field and its adjacent walkways and parking lots are intended or permitted to be used for recreational purposes." Sylvester, 179 Ill.2d at 508, 228 Ill.Dec. 698, 689 N.E.2d 1119.
We find Sylvester to be distinguishable because Soldier Field's adjacent parking lots and walkways served to benefit Soldier Field only and thus increased the usefulness of the stadium. Here, in contrast, the high school parking lot provided access to several different areas of the *1045 school not used for recreational purposes. The parking lot in question is different from the parking lot in Sylvester and a different analysis applies.
The cases that have addressed section 3-106 immunity in connection with school property have found immunity only for gymnasiums, playgrounds and sidewalks intended to be used for recreational purposes within school grounds. See Adamczyk, 324 Ill.App.3d at 926, 257 Ill.Dec. 928, 755 N.E.2d 30 (and cases cited therein). The cases that have dealt with school parking lots and nonrecreational areas that serve the entire school, however, have found that section 3-106 immunity does not apply. Adamczyk v. Township High School District 214, 324 Ill.App.3d 920, 257 Ill.Dec. 928, 755 N.E.2d 30 (2001) (immunity did not apply where plaintiff fell in hole in parking lot located 30 feet from gym entrance, where lot also provided access to front entrance of school, distinguishing Sylvester on the basis that, unlike the school, Soldier Field's "overall and regular purpose" was clearly recreational); Capps v. Belleville School District No. 201, 313 Ill.App.3d 710, 246 Ill.Dec. 401, 730 N.E.2d 81 (2000) (immunity did not apply where plaintiff fell off accessibility ramp as she left school gym); Batson v. Pinckneyville Elementary School District No. 50, 294 Ill.App.3d 832, 229 Ill.Dec. 30, 690 N.E.2d 1077 (1998) (immunity did not apply where plaintiff was injured on sidewalk outside door exiting school gym).
Because the parking lot in this case served the entire school, we find that Bubb is more instructive for purposes of our present analysis than Sylvester. In Bubb, the plaintiff was injured when she rode her bicycle off the edge of a school sidewalk and onto a grass playground. To facilitate the playing of a game known as four-square, the school had painted yellow lines on the sidewalk near where the plaintiff had been injured. In affirming summary judgment for the school, we found that the school intended children to use the area as part of the playground. We cautioned, however, that section 3-106 should not be taken to provide immunity to any public area where recreation might occur. Bubb, 167 Ill.2d at 381, 212 Ill.Dec. 542, 657 N.E.2d 887. We recognized that the use of public property for recreation "may be so incidental that section 3-106 does not apply." Bubb, 167 Ill.2d at 382, 212 Ill.Dec. 542, 657 N.E.2d 887. Therefore, courts should make a case-by-case determination, looking to the nature of the property and its past use. Bubb, 167 Ill.2d at 384, 212 Ill.Dec. 542, 657 N.E.2d 887.
Applying the analysis of Bubb, we hold that any recreational use of the parking lot in question was so incidental that section 3-106 does not apply. The parking lot served the entire school and only incidentally the football practice field. Moreover, the record does not indicate that the lot had been used for recreation prior to the date of the incident or that recreation had ever been encouraged there. That Matthew was traversing the lot at the time of the injury to further the recreational pursuits underway at the football practice field is not important, as immunity depends on the character of the property in question, not the activity performed at any given time (Bubb, 167 Ill.2d at 379, 212 Ill.Dec. 542, 657 N.E.2d 887).
Here, the character of the parking lot was not recreational. If we were to accept defendants' argument, we would be effectively immunizing large amounts of otherwise nonrecreational school property simply because it is located near recreational school property. Defendants, then, would owe no duty of reasonable care to students parking their vehicles and walking through such parking lots to their classes. We do not believe that this was the intent of the *1046 General Assembly when it immunized public property "intended or permitted to be used for recreational purposes," qualifying it with a list of examples of the kinds of public property it had in mindparks, playgrounds, open areas, buildings and other recreational facilities. Accordingly, we conclude that the appellate court erred in affirming summary judgment for defendants based on section 3-106 of the Act.
Our resolution of the immunity issue in favor of plaintiffs leaves us to consider defendants' additional argument in support of their motion for summary judgment. Defendants contend that the unpaved site of the injury was an open and obvious condition, precluding any duty to remedy it. We disagree.
Section 3-102(a) of the Tort Immunity Act provides as follows:
"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 1994).
Factors relevant to the question of whether a duty exists are (1) the reasonable foreseeability of injury to another, (2) the reasonable likelihood of injury, (3) the magnitude of the burden that guarding against the injury places on the defendant, and (4) the consequences of placing that burden on the defendant. Bucheleres v. Chicago Park District, 171 Ill.2d 435, 456, 216 Ill.Dec. 568, 665 N.E.2d 826 (1996).
Generally, a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious. Bucheleres, 171 Ill.2d at 447-48, 216 Ill.Dec. 568, 665 N.E.2d 826 (diving from a seawall into lake water of an unknown depth presents an open and obvious risk). The existence of an open and obvious condition, however, is not a per se bar to a finding of a legal duty on the part of the premises owner or occupier. Sollami v. Eaton, 201 Ill.2d 1, 15, 265 Ill.Dec. 177, 772 N.E.2d 215 (2002). There are two limited exceptions to the rule that a defendant has no duty to protect a plaintiff from an open and obvious condition. See Bonner v. City of Chicago, 334 Ill.App.3d 481, 484, 268 Ill.Dec. 299, 778 N.E.2d 285 (2002), citing Ward v. K mart Corp., 136 Ill.2d 132, 147, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990). Pertinent to our inquiry here is the distraction exception: a property owner owes a duty of due care if there is reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered or will fail to protect himself against it. Sollami, 201 Ill.2d at 15-16, 265 Ill.Dec. 177, 772 N.E.2d 215; Ward, 136 Ill.2d at 149-50, 143 Ill.Dec. 288, 554 N.E.2d 223; Restatement (Second) of Torts § 343A, Comment f, at 220 (1965).
In Ward, the plaintiff walked into a concrete post located immediately outside of a K mart store and was injured. Plaintiff had noticed the post when he entered the store, but was distracted upon exiting due to the large mirror he was carrying out. This court upheld the jury verdict in favor of the plaintiff, finding that despite the open and obvious nature of the post, it was reasonably foreseeable to the store owner *1047 that customers might momentarily forget the post when exiting or might become distracted carrying large items. Ward, 136 Ill.2d at 153, 143 Ill.Dec. 288, 554 N.E.2d 223.
Although the question of whether a duty exists in a particular case is one of law to be determined by the court (Ward, 136 Ill.2d at 140, 143 Ill.Dec. 288, 554 N.E.2d 223), the question of whether defendant breached an existing duty is a question of fact to be determined by the jury (Deibert v. Bauer Brothers Construction Co., 141 Ill.2d 430, 441, 152 Ill.Dec. 552, 566 N.E.2d 239 (1990)). If a duty exists, the jury must decide whether the defendant failed to exercise reasonable care in protecting the plaintiff from harm and whether such failure was the proximate cause of the plaintiff's injury. Deibert, 141 Ill.2d at 441, 152 Ill.Dec. 552, 566 N.E.2d 239 (if the jury finds that the possessor of land exercised reasonable care, the possessor will not be liable to the invitee despite his duty); see also Ward, 136 Ill.2d at 156, 143 Ill.Dec. 288, 554 N.E.2d 223 ("Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact").
We find the present case to be similar to Ward. It was reasonably foreseeable that students may fail to avoid the risk posed by the hole by becoming distracted or momentarily forgetful. The record contains some evidence that this was in fact the case. Matthew testified he was distracted from the hole because of his focus on carrying a football helmet to the player who needed it. We further find that the broken ankle suffered by Matthew is the kind of injury likely to result from unexpectedly stepping into a hole. Moreover, the magnitude of the burden to exercise reasonable care to protect persons from the risk of falling in the hole was slight. The location had been barricaded earlier, indicating that defendants may not have considered the hole to be open and obvious, but the barricades had been unexplainably removed by the time of the injury. Defendants could have guarded against the injury simply by leaving the barricades in place. Under these circumstances, we find that summary judgment in favor of defendants based on the alleged open and obvious nature of the condition on the premises would be inappropriate.

CONCLUSION
For the foregoing reasons, we reverse the judgments of the appellate and circuit courts. The cause is remanded to the circuit court for further proceedings consistent with this opinion.
Reversed and remanded.